IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CHANCERY DIVISION

MARTIN G. VEGA,                           )
                                          )
                Plaintiff,                )
                                          )
        vs.                               )   No.
                                          )
FIDELITY SECURITY LIFE                    )
INSURANCE COMPANY and ISM                 )
ADMINISTRATORS,                           )
                                          )
                Defendants.               )

FILED
2007 DEC 27 PM 3: 29
CIRCUIT COURT OF COOK
COUNTY ILLINOIS CHANCERY DIV.
DOROTHY BROWN      CLERK

07CH38437

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiff, MARTIN G. VEGA, by his attorneys, MICHAEL J. GOLDSTEIN &

ASSOCIATES, LTD., makes the following complaint for declaratory judgment and other

relief against defendants, FIDELITY SECURITY LIFE INSURANCE COMPANY ("Fidelity")

and ISM ADMINISTRATORS ("ISMA"):

### COUNT I

1.      Plaintiff is a resident of the City of Berwyn, County of Cook, State of Illinois.

2.      On or about January 1, 1999, plaintiff purchased a Certificate of Insurance

("Certificate") evidencing his insurance coverage under a Master Insurance Policy issued

to the American Association of Private Employees, by Fidelity.  Plaintiff does not have a

copy of the Certificate to attach to this complaint. A copy of the of the Policy, is attached

hereto and incorporated herein by reference as plaintiff's Exhibit A .

3.      The Policy contains a Monthly Disability Income Benefit Rider.  A copy of the

Rider is part of the Policy, attached hereto.

4.      Simultaneously with his purchase of the Certificate, plaintiff entered into a

service agreement with ISMA ("Service Agreement") pursuant to which ISMA agreed to

facilitate the automatic transfer of funds from plaintiff's bank account at MidAmerica Bank

to Fidelity in payment of the monthly Certificate/Policy premium.  A copy of the service

agreement is attached and incorporated by reference as plaintiff's Exhibit B.  The Service



Agreement was in effect at all times relevant to the facts set forth in this complaint.

5.    Pursuant to the Service Agreement, plaintiff authorized ISMA to timely withdraw funds equal to the monthly premium due on the Certificate/Policy from plaintiff's account at MidAmerica Bank and to convey those funds to Fidelity.

6.    In the performance of its duties pursuant to the service agreement ISMA was acting at all times as the agent of both plaintiff and Fidelity.

7.    At no time during the months of August, 2005 through February, 2006, did plaintiff instruct MidAmerica Bank to dishonor the request for the automatic withdrawals to be made by ISMA pursuant to the terms of the Service Agreement

8.    Fidelity, through its agent, defendant ISMA, had a duty to direct the timely monthly withdrawals of the Policy premium amounts from plaintiff's bank account at MidAmerica Bank and to transmit the premium amounts to Fidelity so as to maintain the plaintiff's insurance coverage under the terms of the Policy, and particularly, under the terms of the Policy's disability insurance rider.

9.    In contravention of its obligations and covenants as aforesaid, Fidelity, through its agent, ISMA, breached its duty to plaintiff in the following ways:

    (a)    ISMA failed and refused to request MidAmerica Bank to make the automatic payment to Fidelity for plaintiff's December, 2005 premium payment.

    (b)    Neither Fidelity nor ISMA gave timely notice to plaintiff of ISMA's failure and refusal as aforesaid, so plaintiff believed the premium had been paid and was unable to timely make the premium payment to Fidelity in some other fashion.

    (c)    As a direct result of ISMA failure and refusal to make the required withdrawal of funds as aforesaid, and the further failure of Fidelity and ISBA to give timely notice of that failure and refusal to plaintiff, the insurance premium due Fidelity for the month of December, 2005 was not paid and Fidelity wrongly notified plaintiff that the his insurance coverage under the Policy had lapsed and terminated.

10.    After terminating the plaintiff's insurance coverage, Fidelity thereafter allowed plaintiff to reinstate coverage, but only upon re-application and payment of the December,

2005 premium, all of which plaintiff did.

11.    Before Fidelity wrongfully declared that plaintiff's insurance coverage had lapsed, plaintiff had been diagnosed with a form of stomach cancer, and as a result thereof, plaintiff became totally and permanently disabled.

12.    Plaintiff requested disability payments pursuant to his Certificate/Policy.

13.    Fidelity has refused to provide disability benefits pursuant to the Certificate/Policy, asserting that plaintiff failed to disclose in his application for reinstatement that he had succumbed to stomach cancer.

14.    At all relevant times, plaintiff had complied fully with the terms of the original Certificate/Policy and with the terms of the Servicing Agreement.

15.    Fidelity's refusal to make disability payments to plaintiff pursuant to the original Certificate/Policy is vexatious and unreasonable.

WHEREFORE, plaintiff prays:

A.    That this Court declare that the original disability and insurance Certificate/Policy issued by defendant Fidelity to plaintiff, has remained in full force and effect at all times;

B.    That this Court determine the amount of the disability to which plaintiff has become entitled since April, 2006, and award plaintiff judgment against Fidelity in the amount equal to plaintiff's disability entitlement;

C.    That this Court compel Fidelity to continue to make all monthly disability payments to plaintiff pursuant to the terms of the Policy;

D.    For costs;

E.    For reasonable attorney's fees as provided by 215 ILCS 5/155;

F.    For such other relief which this Court deems just and equitable.

## COUNT II

1-7.    Paragraphs 1 though 7 of Count I are here repeated as paragraphs 1 through 7 of Count II.

8.    Pursuant to its express responsibilities under the Servicing Agreement, ISMA had a duty to direct the timely monthly withdrawals of the Policy premium amounts from plaintiff's bank account at MidAmerica Bank and to transmit the premium amounts to Fidelity so as to maintain the plaintiff's insurance coverage under the terms of the Policy, and particularly, under the terms of the Policy's disability insurance rider.

9.    In contravention of its obligations and covenants as aforesaid, ISMA, breached its duty to plaintiff in the following ways::

    (a)    ISMA failed and refused to request MidAmerica Bank to make the automatic payment to Fidelity for plaintiff's December, 2005 premium payment.

    (b)    ISMA failed to give plaintiff timely notice of this failure and refusal, so plaintiff believed the premium had been paid and was unable to timely make the premium payment to Fidelity in some other fashion.

    (c)    As a direct result of ISMA's failure and refusal to make the required withdrawal of funds as aforesaid, and its further failure to give timely notice of that failure and refusal to plaintiff, the insurance premium due to be paid to Fidelity for the month of December, 2005 was not paid and Fidelity wrongly notified plaintiff that the his insurance coverage under the Policy had lapsed and terminated.

10-14.  Paragraphs 10 though 14 of Count I are here repeated as paragraphs 10 through 14 of Count II.

WHEREFORE, plaintiff prays:

A.    That this Court determine the amount of the disability to which plaintiff has become entitled since April, 2006, and award plaintiff judgment against ISMA in the amount equal to plaintiff's disability entitlement;

B.    That this Court compel ISMA to continue to make all monthly disability payments to plaintiff pursuant to the terms of the Policy;

C.    For costs;

D.     For such other relief which this Court deems just and equitable.


MARTIN G. VEGA


By:     _____
            One of Its Attorneys


Steven A. Grossman
Michael J. Goldstein & Associates, Ltd.
Attorney for Plaintiff
318 West Adams Street, Suite 1700
Chicago, Illinois  60606
(312) 444-9528
Attorney No. 22713



# FIDELITY SECURITY LIFE INSURANCE COMPANY

3130 Broadway
Kansas City, Missouri 64111-2406
Phone 800-648-8624

A STOCK COMPANY
(Here Called the Company)

## MONTHLY DISABILITY INCOME BENEFIT RIDER



By attachment of this Rider, the Policy/Certificate is amended as follows:

The following Benefit is added to the Policy/Certificate and will only apply if:

1. The Insured's application for such Benefit is approved by Us; and
2. Premium payments are made for the Benefit. Premiums for this Rider are payable at the same interval as premiums for the Certificate.

## DEFINITIONS

**Injury** means bodily Injury sustained directly and independently of all other causes, which results in loss covered by this Rider. The Injury must occur and the loss must begin while the coverage for the Insured is in force under this Rider and the Policy.

**Sickness** means a bodily disorder; a disease; or Complications of Pregnancy. The Sickness must occur while the coverage for the Insured is in force under the Policy. Complications of Pregnancy means any of these: (1) a condition which, while affected by pregnancy, is still classified by accepted medical standards as a Sickness, disease or Injury apart from the normal bodily changes that accompany pregnancy; or (2) an extra-uterine or ectopic pregnancy; or (3) a spontaneous termination of pregnancy during a period of gestation in which a viable birth is not possible.

**Total Disability/Totally Disabled** means that because of Injury or Sickness:

1. during the first 24 months of disability, the Insured cannot perform the material and substantial duties of his or her regular occupation. The Insured must be under the care of a Physician. For a homemaker or student, regular occupation shall be considered the same as an occupation for wage or profit.
2. after 24 months of disability, the Insured is completely unable to perform the material and substantial duties of any occupation for which he or she is reasonably fitted by education, training or experience. The Insured must be under the care of a Physician, unless the Physician certifies that the Insured does not need the regular care of a Physician for such disabling condition.

The loss of a professional or occupational license for any reason does not, in itself, constitute Total Disability.



EXHIBIT

A

R-02618

## BENEFIT

We will pay the Monthly Disability Income Benefit shown on the Certificate Schedule under the following conditions:

1. The Insured must become Totally Disabled by Injury or Sickness;
2. The Total Disability must begin while the Policy and this Rider are in effect;
3. The Total Disability must begin before the Certificate Anniversary Date following the Insured's 60th birthday; and
4. The Total Disability must continue for more than six months.

After six months of Total Disability, the first monthly income payment is made beginning with the first month of continuous Total Disability. Thereafter, payments are made at the end of each full month that such Total Disability continues. Benefits cease on the date shown in the Certificate Schedule. We will pay 1/30th of the Monthly Disability Income Benefit for each day of a partial month that the Insured is Totally Disabled.

We will refund any premium due and paid after the Insured becomes Totally Disabled if such total Disability began before the end of the grace period.

The Maximum Monthly Disability Income Benefit is shown in the Certificate Schedule.

## EXCLUSIONS

The Monthly Disability Income Benefit is not payable for any Total Disability:

1. the Insured intentionally inflicts on himself or herself while sane or insane (in Missouri while sane); or
2. caused by war, declared or undeclared, or any act or war.

## TERMINATION

This Rider will terminate on the earliest of:

1. The Certificate Anniversary Date following the Insured's 60th birthday;
2. The premium due date the Insured fails to pay the required premium for this Rider or the Certificate, subject to the grace period;
3. The date the Insured's Certificate becomes reduced paid up or extended term insurance, is exchanged, expires, matures, or otherwise terminates; or
4. On the next premium due date following the date the We receive a written request from the Owner to terminate coverage.

Termination of the Insured's insurance will not prejudice any claim originating before such termination; provided the Insured continues to meet the definition of Total Disability. Such Benefit payable will not continue beyond the Certificate Anniversary Date following the Insured's 65th birthday.

This Rider takes effect on the effective date shown in the Certificate Schedule. It is subject to all the definitions, limitations, exclusions, and conditions of the Policy/Certificate except as stated.

FIDELITY SECURITY LIFE INSURANCE COMPANY

Secretary                    President

2



# FIDELITY SECURITY LIFE INSURANCE COMPANY

3130 Broadway
Kansas City, Missouri 64111-2406
Phone 800-648-8624

(A STOCK COMPANY)
(Herein Called the Company)

## MONTHLY DISABILITY INCOME BENEFIT RIDER



By attachment of this Rider, the Policy/Certificate is amended as follows:

The following Benefit is added to the Policy/Certificate and will only apply if:

1. The Insured's application for such Benefit is approved by Us; and
2. Premium payments are made for the Benefit. Premiums for this Rider are payable at the same interval as premiums for the Certificate.

## DEFINITIONS

**Injury** means bodily Injury sustained directly and independently of all other causes, which results in loss covered by this Rider. The Injury must occur and the loss must begin while the coverage for the Insured is in force under this Rider and the Policy.

**Sickness** means a bodily disorder; a disease; or Complications of Pregnancy. The Sickness must occur while the coverage for the Insured is in force under the Policy. **Complications of Pregnancy** means any of these: (1) a condition which, while affected by pregnancy, is still classified by accepted medical standards as a Sickness, disease or Injury apart from the normal bodily changes that accompany pregnancy; or (2) an extra-uterine or ectopic pregnancy; or (3) a spontaneous termination of pregnancy during a period of gestation in which a viable birth is not possible.

**Total Disability/Totally Disabled** means that because of Injury or Sickness:

1. during the first 24 months of disability, the Insured cannot perform the material and substantial duties of his or her regular occupation. The Insured must be under the care of a Physician. For a homemaker or student, regular occupation shall be considered the same as an occupation for wage or profit.
2. after 24 months of disability, the Insured is completely unable to perform the material and substantial duties of any occupation for which he or she is reasonably fitted by education, training or experience. The Insured must be under the care of a Physician, unless the Physician certifies that the Insured does not need the regular care of a Physician for such disabling condition.

The loss of a professional or occupational license for any reason does not, in itself, constitute Total Disability.

R-02618

TL-68



FIDELITY SECURITY LIFE
INSURANCE COMPANY
3130 Broadway
Kansas City, Missouri 64111-2406
Phone 800-648-8624

A STOCK COMPANY
(herein called the Company)

## 10 YEAR TERM LIFE INSURANCE BENEFIT RIDER

By attachment of this Rider, the Policy/Certificate is amended as follows:

The following Benefit is added to the Policy/Certificate and will only apply if:

1. The Insured Person's application for this Benefit is approved by Us; and
2. Premium payments are made for this Benefit. Reference to Insured's, Other Insured's, and Insured Person's coverage applies only if the application for such person has been approved by Us, and the required additional premium has been paid for this Benefit.

Premiums for this Rider are payable at the same interval as premiums for the Certificate.

### DEFINITIONS
Insured means the person shown in the Certificate Schedule whose coverage under the Policy has become effective and has not ended.

Insured Person means the Insured or an Other Insured.

Other Insured means each person shown as covered under this Rider as an Other Insured in the Certificate Schedule whose coverage under the policy has become effective and has not ended.

### BENEFIT UPON THE DEATH OF AN INSURED PERSON
We will pay the Death Benefit of this Rider to the Beneficiary when We receive the due proof of an Insured Person's death that occurs while this Rider is in force. We will pay the Death Benefit subject to the terms and provisions of this Rider. The Death Benefit of this Rider is shown in the Certificate Schedule.

### TERM OF INSURANCE
The term of this insurance is for 10 years during which the amount of insurance does not change.

R-02617

TL-68



# FIDELITY SECURITY LIFE INSURANCE COMPANY

3130 Broadway
Kansas City, Missouri 64111-2406
Phone 800-648-8624

## ACCIDENTAL DEATH BENEFIT RIDER

By attachment of this Rider, the Policy/Certificate is amended as follows:

The following Benefit is added to the Policy/Certificate and will only apply if:

1. The Insured's application for such Benefit is approved by Us; and
2. Premium payments are made for the Benefit. Premiums for this Rider are payable at the same interval as premiums for the Certificate.

**DEFINITIONS**
Injury means bodily Injury sustained directly and independently of all other causes, which results in loss covered by this Rider. The Injury must occur and the loss must begin while the coverage for the Insured is in force under this Rider and the Policy.

**BENEFIT**
If an Insured sustains an accidental bodily Injury prior to the Certificate Anniversary Date following his or her 70th birthday, and within 90 days of the Injury, dies as a direct result of that Injury, We will pay the Accidental Death Benefit Amount shown in the Certificate Schedule. The Injury and death both must occur while the Insured is covered by the Certificate and this Rider.

**EXCLUSIONS**
No benefit will be payable for any loss caused by or contributed to by:

1. disease, bodily or mental health, or diagnostic medical or surgical treatment;
2. attempted suicide or intentional self inflicted Injury while sane or insane (in Missouri, while sane);
3. infections, except pyogenic infection resulting from an accidental bodily Injury or resulting from accidental ingestion of a contaminated substance;
4. war or any act of war whether declared or undeclared;
5. active participation in a riot or insurrection. "Participation" means taking an active part in common with others. "Riot" means any use or threat to use force or violence by three or more persons without authority of law;
6. commission or attempted commission of a felony, assault, or illegal action;
7. travel or flight in any aircraft, except as a fare-paying passenger of a commercial airline flying on regularly scheduled routes between definitely established airports;
8. decent or otherwise falling from any type of aircraft.

R-02614

TL-68

**TERMINATION**
This Rider will terminate on the earliest of:

1. The Certificate Anniversary Date following the Insured's 70th birthday;
2. The premium due date the Insured fails to pay the required premium for this Rider or the Certificate, subject to the grace period;
3. The date the Insured's Certificate becomes reduced paid up or extended term insurance, is exchanged, expires, matures, or otherwise terminates; or
4. On the next premium due date following the date the We receive a written request from the Owner to terminate coverage.

Termination of the Insured's insurance will not prejudice any claim originating before such termination.

This Rider takes effect on the effective date shown in the Certificate Schedule.  It is subject to all the definitions, limitations, exclusions, and conditions of the Policy/Certificate except as stated.

FIDELITY SECURITY LIFE INSURANCE COMPANY

Secretary                              President

 **FIDELITY SECURITY LIFE INSURANCE COMPANY**

3130 Broadway
Kansas City, Missouri 64111-2406
Phone: 800-648-8624

A STOCK COMPANY
(Herein Called the Company)



## WAIVER OF PREMIUM FOR TOTAL DISABILITY RIDER

By attachment of this Rider, the Policy/Certificate is amended as follows:

The following Benefit is added to the Policy/Certificate and will only apply if:

1. The Insured's application for such Benefit is approved by Us; and
2. Premium payments are made for the Benefit. Premiums for this Rider are payable at the same interval as premiums for the Certificate.

**DEFINITIONS**
**Injury** means bodily Injury sustained directly and independently of all other causes, which results in loss covered by this Rider. The Injury must occur and the loss must begin while the coverage for the Insured is in force under this Rider and the Policy.

**Sickness** means a bodily disorder; a disease; or Complications of Pregnancy. The Sickness must occur while the coverage for the Insured is in force under the Policy. **Complications Of Pregnancy** means any of these: (1) a condition which, while affected by pregnancy, is still classified by accepted medical standards as a Sickness, disease or Injury apart from the normal bodily changes that accompany pregnancy; or (2) an extra-uterine or ectopic pregnancy; or (3) a spontaneous termination of pregnancy during a period of gestation in which a viable birth is not possible.

**Total Disability/Totally Disabled** means that because of Injury or Sickness:

1. during the first 24 months of disability, the Insured cannot perform the material and substantial duties of his or her regular occupation. The Insured must be under the care of a Physician. For a homemaker or student, regular occupation shall be considered the same as an occupation for wage or profit.
2. after 24 months of disability, the Insured is completely unable to perform the material and substantial duties of any occupation for which he or she is reasonably fitted by education, training or experience. The Insured must be under the care of a Physician, unless the Physician certifies that the Insured does not need the regular care of a Physician for such disabling condition.

The loss of a professional or occupational license for any reason does not, in itself, constitute Total Disability.

TL-68

R-02619

## WAIVER OF PREMIUM

We will waive premium payments, except the premium for any Annuity Rider attached to the Certificate, under the following conditions:

1. The Insured must become Totally Disabled by Injury or Sickness;
2. The Total Disability must begin while the Certificate and this Rider are in effect;
3. The Total Disability must begin before the Certificate Anniversary Date following the Insured's 60th birthday; and
4. The Total Disability must continue for more than six months.

After six months of Total Disability, premiums will be waived back to the date the Total Disability began. Premiums which become due and were paid during this six-month period will be refunded.

Only premium payments under the Certificate during the Insured's Total Disability are waived. The premiums waived according to the payment mode in force when Total Disability began. Values and other benefits of the Certificate will be the same as if the premiums waived had been paid in cash.

We will refund any premium due and paid after the Insured becomes Totally Disabled if such total Disability began before the end of the grace period.

## EXCLUSIONS

Waiver of Premium will not be granted if Total Disability results from one of the following:

1. the Insured intentionally inflicts on himself or herself while sane or insane (in Missouri while sane); or
2. caused by war, declared or undeclared, or any act or war.

## TERMINATION

This Rider will terminate on the earliest of:

1. The Certificate Anniversary Date following the Insured's 60th birthday, unless Totally Disabled;
2. The premium due date the Insured fails to pay the required premium for this Rider or the Certificate, subject to the grace period;
3. The date the Insured's Certificate becomes reduced paid up or extended term insurance, is exchanged, expires, matures, or otherwise terminates; or
4. On the next premium due date following the date the We receive a written request from the Owner to terminate coverage.

This Rider takes effect on the effective date shown in the Certificate Schedule. It is subject to all the definitions, limitations, exclusions, and conditions of the Policy/Certificate except as stated.

FIDELITY SECURITY LIFE INSURANCE COMPANY

Secretary                         President



# FIDELITY SECURITY LIFE INSURANCE COMPANY

3130 Broadway
Kansas City, Missouri 64111-2406
Phone 800-648-8624

A STOCK COMPANY
(Herein called the Company)

## FLEXIBLE PREMIUM ANNUITY BENEFIT RIDER

By attachment of this Rider, the Policy/Certificate is amended as follows:

The following Benefit is added to the Policy/Certificate and will only apply if the Insured's application for such Benefit is approved by Us.

## DEFINITIONS

**Annuitant** means the person named in the Certificate Schedule. This is the person who will receive the annuity payments on the Maturity Date.

**Beneficiary** means the person named to receive benefits upon the death of the Annuitant. The Beneficiary is named in the application or in the most recent request received by Us while the Annuitant is living.

**Maturity Date** means the date chosen by You. If a Maturity Date is not chosen, We use the later of the Certificate Anniversary Date after the Annuitant's 70th birthday, or 10 years from the Certificate Effective Date. The Maturity Date can be changed with notification to Us in writing.

## DEATH BENEFIT

The amount payable if the Annuitant dies before the Maturity Date is the Account Value as of the date of death. The Death Benefit is not less than the minimum required by the law of the state in which the Certificate is issued. The Beneficiary may choose between a single payment or any of the income options shown in the Certificate Schedule. Proof of death satisfactory to Us is required.

## ANNUITY BENEFITS

On the Maturity Date, the Account Value can be paid in one lump sum or according to one of the income options shown in the Certificate. Proceeds are payable upon surrender of this Rider.

## PREMIUMS

Premiums may be paid at any time and for any amount, while this Rider is in force before the Maturity Date and before the Annuitant's death.

R-02616

TL-68

**GENERAL PROVISIONS**

Incontestability: The Incontestability provision of the Certificate to which this Rider is attached applies to this Rider.

Beneficiary: The Beneficiary is named in the application or in the most recent change recorded. Unless specified otherwise in writing, the Insured is the Beneficiary for any Other Insured covered under this Rider. The Beneficiary can be changed in accordance with the Change of Owner or Beneficiary provision of the Certificate to which this Rider is attached.

This Rider takes effect on the effective date shown in the Certificate Schedule. It is subject to all the definitions, limitations, exclusions, and conditions of the Policy/Certificate except as stated.

FIDELITY SECURITY LIFE INSURANCE COMPANY

Secretary                                    President

4

## ACCOUNT VALUE

The Account Value equals (1) - (2) + (3) where:

(1) Equals 100% of the premiums paid;
(2) Is any Partial Surrender Amounts; and
(3) Is the interest earned on (1) - (2) from the date of deposit or the date of withdrawal. The Guaranteed Interest Rate is 4%. Excess interest may be credited to this Rider as declared by Us and may be changed at any time.

## SURRENDER VALUE

The Surrender Value is equal to the Account Value. The Surrender Value is not less than the minimum required by the law of the state in which the Certificate is issued.

## FULL SURRENDER

At any time before the Maturity Date, You may request in writing to receive this Rider's Surrender Value in a single sum.

## PARTIAL SURRENDER

After the first Annuity Anniversary and before the Maturity Date of this Rider, You may surrender part of the Account Value one time each year. The amount withdrawn at any one time must be at least $250. A Partial Surrender may not reduce the Account Value remaining below $1,000.

## PAYMENT DEFERRAL

We can delay payment of any amount surrendered for up to six months from the date of Surrender. However, interest continues to be earned at the declared rate or the rate required by the law of the state in which the Certificate is issued, whichever is greater.

## CONVERSION PRIVILEGE

This Rider can be converted to an annuity policy, in a form currently being sold by Us, upon termination of the Insured's Certificate to which this Rider is attached. To convert this Rider, the following conditions must be met:

1. You must convert this Rider while it is in effect during the Annuitant's lifetime and prior to the Maturity Date shown in the Certificate Schedule; and
2. We must receive Your written request to convert this Rider to an annuity policy.

The effective date of the annuity policy will be the date of the conversion. The Account Value will not be greater than the Account Value in effect under this Rider at the time of the conversion.

## ANNUAL REPORT

We will send an annual report which shows the following:

1. The current Account Value;
2. The amount and date of any premiums paid since the last report;
3. The amount and date of any Partial Surrenders since the last report; and
4. Any other information required by state law.

**TERMINATION**

This Rider will terminate on the earliest of these dates:

1. The Maturity Date of the Rider;
2. The premium due date the Insured fails to pay the required premium for the Certificate, subject to the grace period;
3. The date the Insured's Certificate becomes reduced paid up or extended term insurance, is exchanged, expires, matures, or otherwise terminates; or
4. The date this Rider converts to an annuity policy or is placed under one of the income options of the Certificate.

This Rider takes effect on the effective date shown in the Certificate Schedule. It is subject to all the definitions, limitations, exclusions, and conditions of the Policy/Certificate except as stated.

FIDELITY SECURITY LIFE INSURANCE COMPANY

Secretary                        President

3



**FIDELITY SECURITY LIFE
INSURANCE COMPANY**

3130 Broadway
Kansas City, Missouri 64141-2406
Phone 800-648-6624

A STOCK COMPANY
(Herein called the Company)



## ACCELERATED DEATH BENEFIT RIDER

By attachment of this Rider, the Policy/Certificate is amended by the following:

**Accelerated Death Benefits** means benefits payable under the Policy/Certificate in anticipation of death from a Terminal Medical Condition.

**Accelerated Death Benefit Amount** means the amount the Owner requests according to this Rider. The amount will be adjusted, as stated in the Benefit section of this Rider.

**Administrative Expense Charge** means the amount deducted from the Accelerated Death Benefit Amount to pay the cost of processing the acceleration of Death Benefits according to Our current practice at the time the benefit is requested. In no event will the charge exceed $200.

**Immediate Family** means a spouse, grandparent, parent, brother, sister, or child related by blood or marriage to the Insured, in-law, or any person who resides with the Insured.

**Physician** means a person licensed by the state in which he or she resides to practice the healing arts. He or she must practice within the scope of his or her license for the service or treatment given. He or she cannot be the Insured or a member of the Immediate Family.

**Physician's Statement** means a written statement signed by a Physician which: 1) gives the Physician's diagnosis of the Insured's Terminal Medical Condition; and 2) states that, with reasonable medical certainty, the Terminal Medical Condition will result in death within 12 months or less from the date the statement is signed.

**Terminal Medical Condition** means a medical condition that with reasonable medical certainty, will result in the death of the Insured within 12 months or less from the date of the Physician's Statement. The condition must be diagnosed by a Physician on or after the effective date of this Rider, while this Rider is in force.

**Tax Disclosure Statement:** An Accelerated Death Benefit received under provisions of group life insurance coverage may be taxable to the recipient (and assistance should be sought from a personal tax advisor); and/or, may adversely affect the recipient's eligibility for Medicaid or other government benefits or entitlement.

98
TL-68

**Benefit**

If the Insured is diagnosed with a Terminal Medical Condition, the Owner may request an acceleration of a portion of the Death Benefit of the Policy/Certificate (Accelerated Death Benefit Amount). Payment of a benefit under this Rider will be made only once while the Insured is covered under the Policy/Certificate.

The maximum amount the Owner can request is 50% of the Death Benefit in effect on the date We receive the request, not including benefits provided under any other Riders attached to the Policy/Certificate except for any level term insurance rider on the life of the Insured only. The amount is also limited to a maximum of $250,000, which includes any amounts paid under any other Accelerated Death Benefit Rider in force with Us on the life of the Insured. If requests for Accelerated Death Benefits are being processed at the same time under two or more Policies and exceed the maximum, then each applicable Policy/Certificate will pay its proportionate share.

The amount of Death Benefit that remains in force under the Policy/Certificate must be at least $7,500.

The Accelerated Death Benefit Amount is adjusted or reduced as follows:

1. If the Death Benefit of the Policy/Certificate is scheduled to reduce in the 12 months following the date the Company approves the Insured's request, the Accelerated Death Benefit Amount will be reduced proportionately.

2. An actuarial discount is deducted, which reflects the early payment of the Death Benefit under the Policy/Certificate. This discount is based on the expected future lifetime of the Insured, and the interest rate which is declared by Us. The maximum interest rate We can use is the greater of the yield on 90 day U.S. Treasury Bills or the maximum adjustable Policy/Certificate loan interest rate allowed by law on the date Proof of Terminal Medical Condition is satisfied.

3. An Administrative Expense Charge is deducted from the Accelerated Death Benefit Amount.

4. If the Policy/Certificate has an outstanding loan on the date of Proof of Terminal Medical Condition is satisfied, the Accelerated Death Benefit Amount is reduced to repay a portion of the loan as specified in the Effect of Rider Benefit on Policy/Certificate section of this Rider.

5. If any required premiums are due and are unpaid within the grace period, a reduction in the Accelerated Death Benefit Amount is made to pay these premiums.

**Conditions for Payment of Accelerated Death Benefits**

The payment of Accelerated Death Benefits is conditioned on:

1. The Policy/Certificate must be in force, other than as Extended Term insurance or Reduced paid-Up insurance.

2. Written proof of Terminal Medical Condition must be received by Us as stated in the Proof of Terminal Medical Condition section of this Rider.

3. We must receive written consent from any irrevocable beneficiaries and assignees. We also reserve the right to require consent from a spouse, the Insured, other beneficiaries, or any other person if, in our discretion, such person's consent is necessary.

4. We must receive the Policy/Certificate with the Owner's written request for benefits under the Rider on a form satisfactory to the Company. We will return the Owner's Policy/Certificate with a new Schedule that shows all changes made to the Policy/Certificate benefits. These changes are outlined in the Effect of Rider Benefit on Policy/Certificate section of this Rider.

2

**Effect of Rider Benefit on Policy/Certificate**

After payment of an Accelerated Death Benefit, the Policy/Certificate stays in force, but is changed as follows:

1. The Death Benefit is reduced by the amount of the Accelerated Death Benefit.
2. Any guaranteed and current cash value, any account value, any outstanding loan and any required premium are reduced in the same proportion as the reduction in Death Benefit.
3. If there is a Waiver of Premium or disability waiver coverage in force on the date Proof of Terminal Medical Condition is satisfied, the Insured is deemed to be Totally Disabled and the initial waiting period required by such coverage is satisfied.

**Proof of Terminal Medical Condition**

Written proof of the Insured's Terminal Medical Condition must be furnished to Us at Our home office before Accelerated Death Benefits are paid. Proof includes a properly completed claim form and a Physician's Statement acceptable to us. We may also request more medical information from the Physician or institution deemed necessary. We have the right to require a second opinion at Our expense, from a Physician of Our choice.

**Time of Payment of Benefits**

All benefits are payable immediately upon receipt of the due written Proof of Terminal Medical Condition.

**Payment of Benefits**

All benefits are paid in a lump sum to the Owner. Any benefit unpaid at the Insured's death is paid to the Beneficiary.

**Limitations**

No Accelerated Death Benefit coverage is provided for any benefit other than the Term Life Insurance Benefit.

**Termination**

This Rider will terminate on the earliest of the following:

1. the date benefits are paid under this Rider;
2. the date of the Insured's death;
3. the date the Policy/Certificate becomes Extended Term or Reduced Paid Up insurance; or
4. the date We receive the Owner's written request to terminate this Rider.

This Rider takes effect on the effective date shown in the Certificate Schedule page. This Rider terminates concurrently with the Policy/Certificate to which it is attached. It is subject to all the definitions, limitations, exclusions, and conditions of the Policy/Certificate except as stated.

FIDELITY SECURITY LIFE INSURANCE COMPANY

Secretary                              President

3



## FIDELITY SECURITY LIFE INSURANCE COMPANY

3130 Broadway
Kansas City, Missouri 64111-2406
Phone 800-648-8624

A STOCK COMPANY
(Herein Called the Company)

---

### AMENDMENT RIDER

The Policy/ Certificate to which this Amendment Rider is attached is hereby changed as follows:

1.  The Notice of Claim provision is deleted in its entirety and replaced by the following:

    **Notice of Claim**
    Written notice of claim, other than claims for life benefits, must be sent to Us within 30 days after a loss is incurred or as soon as reasonably possible. Notice given by or on behalf of the Insured to Us at Our home office, or to Our authorized agent at 17722 Irvine Boulevard, Tustin, CA 92780, with sufficient information to identify the Insured is notice to Us.

2.  The Proof of Loss provision is deleted in its entirety and replaced by the following:

    **Proof of Loss**
    For a claim for benefits payable on a periodic basis, other than claims for life benefits, written proof of loss must be furnished to Us within 90 days after the commencement of the period of loss. Subsequent written proofs of the continuance of the loss must be furnished to Us at such intervals as We may reasonably require.

    For a claim for any other loss, other than claims for life benefits, written proof must be furnished to Us within 90 days after the date of the loss or as soon as reasonably possible. However, in no event except in the absence of legal capacity of the claimant, will We accept proof later than one year from the time proof is otherwise required.

3.  The Suicide Limitation is deleted in its entirety and replaced by the following:

    **Suicide**
    Suicide is no defense to payment of life insurance benefits nor is suicide while insane a defense to payment of accidental death benefits, if any, under this Policy. If We can show that the Insured intended suicide when application for coverage under the Policy was made, Our obligation will be only to return the premiums paid, less any outstanding loan.

This Rider terminates concurrently with the Policy/ Certificate to which it is attached. It is subject to all the terms and conditions of the Policy/ Certificate except as stated herein.

FIDELITY SECURITY LIFE INSURANCE COMPANY

Secretary                                  President

TL-68
1998

R-02649

# NOTICE

THIS NOTICE is to advise you that in the event a complaint should arise about this insurance, please contact:

Fidelity Security Life Insurance Company
3130 Broadway
Kansas City, MO 64141
800-648-8624

If we at Fidelity Security Life Insurance Company fail to provide you with reasonable and adequate service, you should feel free to contact:

Illinois Department of Insurance
Consumer Division or Public Services Section
320 West Washington Street, 4th Floor
Springfield, IL 62767

N-00050IL

L93-20464 02/00

## ILLINOIS LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION LAW

Residents of Illinois who purchase health insurance, life insurance, and annuities should know that the insurance companies licensed in Illinois to write these types of insurance are members of the Illinois Life and Health Insurance Guaranty Association. The purpose of this Guaranty Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its policy obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the covered claims of policyholders that live in Illinois (and their payees, beneficiaries, and assignees) and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however, as noted below.

### IMPORTANT DISCLAIMER

The Illinois Life and Health Insurance Guaranty Association provides coverage of claims under some types of policies if the insurer becomes impaired or insolvent. COVERAGE MAY NOT BE AVAILABLE FOR YOUR POLICY. Even if coverage is provided, there are substantial limitations and exclusions. Coverage is generally conditioned on continued residence in Illinois. Other conditions may also preclude coverage.

You should not rely on availability of coverage under the Life and Health Insurance Guaranty Association Law when selecting an insurer. Your insurer and agent are prohibited by law from using the existence of the Association or its coverage to sell you an insurance policy.

The Illinois Life and Health Insurance Guaranty Association or the Illinois Department of Insurance will respond to any questions you may have which are not answered by this document. Policyholders with additional questions may contact:

Illinois Life and Health Insurance Guaranty Association
8420 West Bryn Mawr Avenue
Chicago, Illinois 60631
(773) 714-8050

Illinois Department of Insurance
320 West Washington Street, 4th Floor
Springfield, Illinois 62767
(217) 782-4515

### SUMMARY

The Illinois law that provides for this safety-net coverage is called the Illinois Life and Health Insurance Guaranty Association Law ("Law") (215 ILCS 5/531.01, et seq.). The following contains a brief summary of the Law's coverages, exclusions, and limits. This summary does not cover all provisions, nor does it in any way change anyone's rights or obligations under the Law or the rights or obligations of the Guaranty Association. If you have obtained this document from an agent in connection with the purchase of a policy, you should be aware that its delivery to you does not guaranty that your policy is covered by the Guaranty Association.

(Please turn to other side.)

<u>Coverage.</u>  The Illinois Life and Health Insurance Guaranty Association provides coverage to policyholders that reside in Illinois for insurance issued by members of the Guaranty Association, including:

- life insurance, health insurance, and annuity contracts;

- life, health or annuity certificates under direct group policies or contracts;

- unallocated annuity contracts; and

- contracts to furnish health care services and subscription certificates for medical or health care services issued by certain licensed entities.  The beneficiaries, payees, or assignees of such persons are also protected, even if they live in another state.

<u>Exclusions from Coverage.</u>  The Guaranty Association does not provide coverage for:

- any policy or portion of a policy for which the individual has assumed the risk;

- any policy of reinsurance (unless an assumption certificate was issued);

- interest rate guarantees which exceed certain statutory limitations;

- certain unallocated annuity contracts issued to an employee benefit plan protected under the Pension Benefit Guaranty Corporation and any portion of a contract which is not issued to or in connection with a specific employee, union or association of natural persons benefit plan or a government lottery;

- any portion of a variable life insurance or variable annuity contract not guaranteed by an insurer; or

- any stop loss insurance.

Persons are not protected by the Guaranty Association if:

- the Illinois Director of Insurance determines that, in the case of an insurer which is not domiciled in Illinois, the insurer's home state provides substantially similar protection to Illinois residents which will be provided in a timely manner; or

- their policy was issued by an organization which is not a member insurer of the Association.

<u>Limits on Amount of Coverage.</u>  The Law also limits the amount the Illinois Life and Health Insurance Guaranty Association is obligated to pay.  The Guaranty Association's liability is limited to the lesser of either:

- the contractual obligations for which the insurer is liable or for which the insurer would have been liable if it were not an impaired or insolvent insurer, or

- with respect to any one life, regardless of the number of policies, contracts, or certificates;

  - in the case of life insurance, $300,000 in death benefits but not more than $100,000 in net cash surrender or withdrawal values;

  - in the case of health insurance, $300,000 in health insurance benefits, including net cash surrender or withdrawal values; and

  - with respect to annuities, $100,000 in the present value of annuity benefits, including net cash surrender or withdrawal values, and $100,000 in the present value of annuity benefits for individuals participating in certain government retirement plans covered by an unallocated annuity contract.  The limit for coverage of unallocated annuity contracts other than those issued to certain governmental retirement plans is $5,000,000 in benefits per contract holder, regardless of the number of contracts.

However, in no event is the Guaranty Association liable for more than $300,000 with respect to any one individual.

| If List Billing | | Fidelity Security Life Insurance Company | Agent Name (Please Print) |
|---|---|---|---|
| Company Name | | 3130 Broadway • Kansas City, MO 64141 | MARINA PLATA FORTE RIVERON |
| Billing Number | ISMA01M | APPLICATION FOR INSURANCE<br>RECEIVED MARK INK<br>#FF0128030 | Agent # 200735  901554 |

| Proposed Primary Insured | Name (First, Middle, Last) Martin G Vega | Age at Reg. Eff. Date 41 | Birth Date 9-27-60 | Birth State Mexico | Ht. 5.09 | Wt. 190 |
|---|---|---|---|---|---|---|

☑ Male ☐ Female   ☑ Married ☐ Single ☐ Widowed ☐ Divorced ☐ Separated   Social Security No. 335 82 7855

Home Address 1826 S 61 Av   City Chicago   State IL   Zip Code 60804 98004 (218)   Home Phone No.

Employer Name and Address 11100 Belmont Av 21601a Occupation  Employer Phone No. 1-847-4510680   How Long 4 y
Central Grocers Cooperative Inc. franklin park water order

| Secondary Insured(s)<br>10 Year/<br>Child<br>Term Life<br>Insurance<br>Benefit Riders | Name (First, Middle, Last) | Relation to Primary Insured | Sex | Social Security Number | Occupation | Date of Birth. | Birth Place | Ht. | Wt. |
|---|---|---|---|---|---|---|---|---|---|
| | Enedina Gomez | wife | F | 348972299 | labor lady | 2-17-60 | Mexico | 5.02 | 155 |

| Owner Information | Owner's Name (if other than Proposed Insured) | | | Social Security No. | Relation to Proposed Primary Insured |
|---|---|---|---|---|---|
| | Owner's Address | | City | State | Zip Code |

Beneficiary  Primary Enedina Gomez, Martin and Pedro Gomez  Relationship wife sons
Contingent Juvas Perez and Pedro Vega  Relationship brother inlaw, brother

| Coverage and Benefits for Primary Insured | GROUP LIFE INSURANCE PLAN: ☐ 10 Year Term Life Certificate ☑ Term to 100, Modified Premium Certificate | Premium |
|---|---|---|

☐ Other  72 68

GROUP LIFE INSURANCE PLAN FACE AMOUNT $ MFP   Premium $ 1201.50

RIDERS (Only Available with Term to 100 Modified Premium Group Life Insurance Plan):
☑ Waiver of Premium for Total Disability
☑ Accidental Death Benefit   Face Amount $ ____   $ ____
☑ Monthly Disability Income Benefit Monthly Benefit Amount $ 500   $ ____
☑ Additional Purchase Option Benefit   Face Amount $ ____   $ ____
☐ 10 Year Term Life Insurance Benefit   Face Amount $ ____   $ ____
☐ Child Term Life Insurance Benefit   Face Amount $ ____   $ ____
☑ Accelerated Death Benefit   $ ____
☑ Flexible Premium Annuity Benefit   $ ____
☑ Waiver of Premium for Flexible Premium Annuity Due to Total Disability   $ ____

PRIMARY INSURED'S TOTAL PREMIUM: $ 1,201.50

| Coverage for Secondary Insured(s) | 10 Year Term Life Insurance Benefit Rider | Premium |
|---|---|---|

Name Enedina Gomez  Face Amount $ 50.000   $ 130.50
Name ____  Face Amount $ ____   $ ____
For additional names and amounts, please attach a separate sheet which is signed and dated:
SECONDARY INSURED(S) TOTAL PREMIUM: $ 130.50

| Premiums and Payment Method | TOTAL PREMIUM (ALL INSUREDS): $ 1332 |
|---|---|

Premium Mode:  ☐ Annual  ☐ Allotment   ☐ List Bill (Need a minimum of 3)  ☑ Monthly Pre-Authorized Check (PAC) (Attach Authorization and Void Check)   Automatic Premium Loan? ☑ Yes ☐ No

Send Premium Notices to: ☑ Insured ☐ Owner  ☐ Other (Please attach a separate sheet with with name and address)

Conditional Receipt Given? ☑ Yes ☐ No   Amount Collected: $ 111 —

| Life Insurance in force for all Proposed Insureds | Insured | Name of Company | Benefit/Face Amount | Issue Year | Policy Type |
|---|---|---|---|---|---|

Will the insurance coverage applied for replace or change any existing insurance or annuity contract? ☐ Yes ☑ No
If yes, which company? ____ Policy No.: ____ Termination Date: ____

Has any proposed insured person ever had a driver's license revoked or suspended? ☐ Yes ☑ No
Name: Martin Vega  Driver's License Number: V2005606 0275

Has any proposed insured person used tobacco in any form in the past 12 months? ☐ Yes ☑ No

Has any proposed insured person ever participated or do any anticipate participation in the next two years:
a.  as a pilot, student pilot, or member of the crew of any type of aircraft? ☐ Yes ☑ No
b.  in sky diving, parachuting, underwater diving, racing? ☐ Yes ☑ No
(If yes to either question, please complete and attach Form A-00916)

Has any proposed insured person ever had life, disability, or health insurance coverage declined, restricted, postponed, rated up, or charged an extra premium for such insurance? ☐ Yes ☑ No
If yes, give details:

| A-00904 | SPECIAL REQUESTS | ADMINISTRATIVE OFFICE USE | M-1045, M-1031 99 |
|---|---|---|---|

| Has any proposed insured person: | Yes | No |
|---|---|---|
| 1. Within the past 10 years, had a diagnosis of or been treated for cancer, tumor, cyst, heart or circulatory trouble, high blood pressure, stroke, anemia, blood disorders, diabetes, thyroid, glandular disorder, psychiatric conditions, neurological impairment, digestive system, liver, kidney, respiratory disorders, asthma, emphysema, chronic obstructive lung disease, muscular or skeletal system, alcohol or drug abuse? | ☐ | ☒ |
| 2. Within the past 10 years, been diagnosed or treated by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC)? | ☐ | ☒ |
| 3. Currently or been under a doctor's care or taking any prescribed medication? | ☐ | ☒ |
| 4. During the past 5 years, consulted any physician or other practitioner, been hospitalized, had a blood study, or an operation? | ☐ | ☒ |
| 5. Ever used drugs or similar agents other than as prescribed by a physician? | ☐ | ☒ |
| 6. Ever had surgery or has surgery ever been recommended? | ☐ | ☒ |
| 7. Had any physical or mental defect, including depression or nervousness, other than shown above? | ☐ | ☒ |
| 8. Gained or lost weight in the past year? If yes, give amounts and cause below. | | |

Name and address of regular physician for each proposed insured person: _____

If you answered "Yes" to any of the above questions, give complete details below. If additional space is needed, please attach a separate sheet which is signed and dated.

| Q# | Person to Whom it Applies | Date of Service | Include all information as to the nature of illness or injury, symptoms, duration, treatment, and results. | Name and Address of Physician and Hospital(s), if any. |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

I and the undersigned agent represent that all statements and answers contained in this application are complete and true. I AGREE that application will be the basis for and part of the Certificate that is issued; and that coverage will begin on the effective date in the Certifica the first premium has been paid during the proposed Insured's lifetime and while his/her health and occupation remains as stated on application. I understand any material misstatements or omissions may be used as a basis for rescinding my coverage. This means all cla will be denied and the Company's liability will be limited to full refund of premium less any claims previously paid. I and the undersigned a certify that I have read, or had read to me, the completed application.

Coverage may begin prior to the date of delivery of the Certificate as shown in the Conditional Receipt. Any life benefits effective prior to Certificate delivery date are limited to $75,000. This limit includes any accidental death benefits attached to the Certificate.

I have received and read a copy of the Pre-Notice which describes how information is obtained and used by Fidelity Security Life Insura Company.

I HEREBY AUTHORIZE any licensed physician, medical practitioner, hospital, clinic, or other medical or medically related facility, insura company, or the Medical Information Bureau, Inc., that has any records or knowledge of me, or my health, or any other proposed insured or t health, to give to Fidelity Security Life Insurance Company, or its reinsurers, any such information for use to determine eligibility for insur or benefits under an existing policy. A photographic copy of this authorization shall be as valid as the original. I agree this authorization s be valid for two years from the date shown below. I understand that I or my authorized representative may receive a copy of this authorizat

No claim can: a) accept risks; b) modify coverage; or c) waive any rights or requirements. The acceptance of any Certificate issued on the b of this application shall be an acceptance and ratification of all corrections, additions, or changes noted in the "Administrative Office U section on the front of this application. However, any change in the amount, class, plan of insurance, benefits, or the age at issue shall be sub to written agreement by the applicant.

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a cl containing a false or deceptive statement is guilty of insurance fraud.

X _Martin G. Vega_  5-7-2    X _Guadina Vega_  5-7-
Signature of Proposed Insured   Date    Signature of Proposed Secondary Insured (if an adult)   Date

X _____    X _____
Signature of Owner Applicant   Date    Signature of Proposed Secondary Insured (if an adult)   Date

X _Norma Plata_ _Gutgutierrez_ 5-7-2    X _____
Signature of Licensed Agent   Date    Signature of Parent or Legal Guardian of Proposed Secondary Insured   Date
(if Proposed Secondary Insured is a minor)

5-7-2   _Chicago_   _Il_    _36196223_   _32692436Z_
Dated   City   State    Agent's State License

### Agent Information

Is Proposed Insured's Certificate to be sent to the Agent? ☒ Yes ☐ No

*Writing Agent Statement*

I hereby attest that I: 1) have personally seen the person proposed for insurance at the time this application was completed; 2) have person asked each question on the application of the person proposed for insurance, and to the best of my knowledge and belief the statements contai in the application are complete and true; 3) have personally witnessed the signature of the person proposed for insurance.
To your knowledge and belief, will the insurance coverage applied for replace or change any existing insurance or annuity contract? ☐ Yes ☐ N

If yes, which company? _____ Policy No.: _____   Termination Date: _____

Agent's Signature X _Norma Plata_    Commission % _50_

Agent No. _900935_   Dated at _Cicero_   this _7_ day of _May_  _200Z_

# EN SU PRIMER AÑO ➡

Los pagos a su póliza son transferidos de su cuenta corriente, cuenta de ahorros o cheque de pago a una cuenta custodiada asegurada por FDIC en el Bank of America. Los administradores de ISM, un administrador licenciado de pólizas, lo envía a Fidelity Security Life Insurance Company, para comprar un Certificado/Póliza de Seguro de Vida de Prima Modificada a Término a 100 Años de Edad. Parte de su prima es colocada en el seguro de vida de término y en la porción del beneficio opcional de incapacidad certificado/póliza. El resto de la prima adicional del primer año es colocado en la porción de reserva del certificado/póliza, y madura en 10 años. Al final de los 10 años, esta prima adicional le será devuelta en un porcentaje de alrededor de 260% de su valor original, siempre y cuando usted no cancele el plan antes de que los 10 años iniciales se cumplan.

* 17722 Irvine Blvd., Tustin, CA 92780



# ⬅ EMPEZANDO EL SEGUNDO AÑO

# AL FINAL DE LOS 10 AÑOS ➡

Ahora usted tiene la flexibilidad de determinar lo que es mejor para usted. Puede parar de pagar completamente o puede continuar el tiempo que quiera. De acuerdo a sus necesidades, usted puede renovar la covertura del seguro por 10 años mas, cancelarla, o continuarla a término disminuyente hasta la edad de 100 años. Los pagos a su vehículo de acumulación de efectivo también son flexibles. Puede pararlos después de 10 años o continuar hasta que usted quiera.

Su representante le puede mostrar la cantidad de sus beneficios e ilustrar los resultados que usted puede experimentar.

**1**  • PARE EL SEGURO  • PARE LOS PAGOS

**2**  • PARE EL SEGURO  • CONTINUE LOS PAGOS

**3**  • CONTINUE EL SEGURO  • CONTINUE LOS PAGOS

# PREGUNTAS MAS FRECUENTES

**P: ¿Cómo puedo aplicar para el plan FREEDOMFLEX?**
**R:** Debe ser miembro de la asociación, y tener menos de 75 años de edad, y estar en buen estado de salud para poder aplicar para este beneficio. Tambien puede ser un familiar inmediato de un miembro de la asociación. La covertura mínima debe ser de $15.000.

**P: ¿Qué es la anualidad de impuestos diferidos?**
**R:** Es un plan que le deja acumular fondos que pueden ser usados para su jubilación. La velocidad de acumulación puede ser substancialmente mayor que la de programas de acumulación convencional sometidos a impuestos. Bajo las leyes actuales de impuestos (IRC SECTION 72) su anualidad diferida se acumula con intereses compuestos en base a impuestos diferidos. Eso significa que el interés acreditado a su anualidad crece 100% libre de impuestos federales, estatales y locales hasta que usted empiece a hacer extracciones de su anualidad. Adicionalmente, el valor de su anualidad diferida estable, y el valor principal de su anualidad diferida está garantizado. Al jubilarse, la anualidad puede ser usada para ayudar a proveerle con ingresos de por vida.

**P: ¿Cómo es acreditado el interés a mi Anualidad de Impuestos Diferidos ?**
**R:** Sus pagos de anualidades y el interés acumulado son acreditados a un interés actual, que es compuesto diariamente y acreditado mensualmente. El interés actual es declarado anualmente en base a las condiciones económicas del momento, pero nunca será de un valor menor a 4.00%, como es declarado en la anualidad.

**P: ¿Qué pasa si muero antes de jubilarme?**
**R:** El Beneficio por Muerte de su Certificado/Póliza de Seguro de Vida más el valor de su vehículo de acumulación de efectivo, será pagado a sus beneficiarios. Los importes pagables de su Certificado/Póliza de Seguro de vida pueden ser pagados a sus beneficiarios sin ser sometidos a impuestos, conforme a IRC Section101. Consulte a su representante o asesor de impuestos para más detalles.

**P: ¿ Cómo seguiré el crecimiento del valor de mi acumulación de dinero?**
**R:** Junto con la anualidad, en cada aniversario de su certificado/póliza, usted recibirá un estado de cuenta anual mostrando los pagos, el interés ganado, y cualquier extracción realizada en el año anterior. Cualquier vehículo de acumulación de efectivo no perteneciente al seguro que usted haya elegido le proveerá un estado de cuenta por cada transacción, al igual que un balance de fin de año.

**P: ¿Qué sucede si necesito retirar fondos del vehículo de acumulación de efectivo antes de mi jubilación?**
**R:** Si su vehículo de acumulación de efectivo es la anualidad, los fondos están disponibles para extracciones sin cargos . Usted puede retiar parte del valor de la cuenta una vez por año. La cantidad retirada en cualquier ocasión debe ser al menos $250 y no puede reducir el valor de la cuenta por debajo de $1000. Las provisiones de su anualidad explican esto detalladamente. Debido a que esta anualidad está diseñada para proveerle para su jubilación, las leyes actuales (IRC Section 72) imponen una multa de impuesto de 10% a la cantidad disponible que usted retira antes de la edad de 59½.

Si su vehículo de acumulación de efectivo no es la anualidad, usted puede retirar fondos en cualquier momento sin multas. Si usted ha calificado su vehículo opcional de acumulación de efectivo como IRA, ciertas multas podrían ser impuestas.

Nota: Este programa no provee ningún rendimiento de valores de efectivo el primer año.

**P: ¿Cómo puedo tener acceso a mi acumulación de efectivo cuando me retire?**
**R:** La anualidad de prima flexible le permite retirar una cantidad del valor de su cuenta, o elegir una de las cuatro opciones de ingresos ofrecidas por la compañía de seguro. Las opciones son: (1) Anualidad de por Vida (2) Anualidad de por Vida con periodos de 10 o 20 años (3) una cantidad fija (4) ingresos de intereses.

El vehículo de acumulación de efectivo no perteneciente al seguro, ofrece una cantidad o un plan de extracciones mensuales automáticas.

**P: ¿ Qué pasa si cambio de trabajo? Puedo continuar con el plan de FREEDOMFLEX si sigo contribuyendo por medio de deducciones de mi salario?**
**R:** Si. El Certificado/Póliza es comprado por usted y usted es el dueño. Notifique a su representante local o a administradores de ISM inmediatamente, si cambia de empleo y usted pódra continuar con el programa en forma individual sin ninguna reducción de beneficios.

**P: ¿Cuando elijo mi vehículo de acumulación de efectivo?**
**R:** Al final del primer año usted recibirá una carta de los administradores de ISM. La carta le recordará que usted tiene opción de vehículos de acumulación de efectivo. Su opción automática es la anualidad de prima flexible, la cual viene con su Certificado/Póliza. Si usted elige un fondo de inversiones sin costos, usted tratará directamente con la compañía registrada de inversiones de su elección.

**P: ¿Qué pasa com mi programa de FREEDOMFLEX despues de 10 años ?**
**R:** Al final de los 10 años usted puede elegir (1) renovar el certificado/póliza por otros 10 años (2) dirigir todas sus primas futuras a su vehículo de acumulación de efectivo (3) convertir el programa a una póliza de seguro completa, o (4) dejar de hacer pagos y dejar que el vehículo de acumulación de efectivo acumule intereses hasta su jubilación. Si usted no hace una elección en el décimo año, el certificado/póliza será renovado automáticamente como témino disminuyente hasta la edad de 100 años. Si usted elige dirigir todos los pagos de primas al vehículo de acumulación de efectivo o decide parar sus pagos, su certificado/póliza y beneficios opcionales son descontinuados.

**P: ¿Cómo puedo obtener asistencia y respuestas a preguntas adicionales que pueda tener el futuro?**
**R:** Su representante estará disponible para responder todas las preguntas que usted pueda tener, o puede llamar a los administradores de ISM al 1-800-488-1474.

**P: ¿Qué pasa si estoy desabilitado?**
**R:** Si es comprovado, y usted queda totalmente desabilitado antes de los 60 años, la dispensa opcional de su conductor de prima dispensará su prima de seguro de vida retroactivamente (despues de un periodo de espera de seis meses) Y el conductor de ingresos mensuales por desabilitado puede ser usado para continuar pagos a su vehículo opcional de acumulación de efectivo hasta los 65 años.

**P: ¿Qué pasa si tengo una enfermedad terminal?**
**R:** Si usted es diagnosticado con una condición médica que le reduzca su vida a 12 meses o menos , usted puede requerir que se le adelante hasta 50% de su beneficio de muerte (covertura mínima de $15.000 es requerida) si el beneficio de muerte acelerada está junto con su cerificado/póliza. La cantidad de beneficio restante debe ser de por lo menos $7.500.

**SUBSCRITO POR FIDELITY SECURITY LIFE INSURANCE COMPANY, KANSAS CITY, MO 64141**

Certificado/Póliza de Seguro de Vida de Término de Prima Modificado a 100 M-1031, M-1033

Si es emitido como certificado, puede renovar su plan de por vida. Si el grupo de póliza es terminado, su covertura será continuada como un contrato directo entre usted y la compañía. Este folleto es una descripción del plan, las provisiones exactas del plan están contenidas en el Certificado/Póliza.

FREEDOMFLEX® es vendido exclusivamente por agentes con licencia a través de

ISM® **INTERSTATE SPECIALTY MARKETING, INC.**

† AAGE/AAPE ARE NOT FOR PROFIT MISSOURI CORPORATIONS UNAFFILIATED WITH THE FEDERAL GOVERNMENT
FREEDOMFLEX® IS A TRADEMARK OF INTERSTATE SPECIALTY MARKETING, INC.

# SERVICE AGREEMENT

**ADMINISTERED BY: ISM ADMINISTRATORS (ISMA)** • 17722 IRVINE BOULEVARD • TUSTIN, CA 92780 • (714) 505-1100
www.ismflex.com

| | | |
|---|---|---|
| 1) DEPOSITORS NAME □ INDIVIDUAL □ BUSINESS<br>Last _Vega_ First _G._ _Martin_ | 7) NAME OF BANK _MidAmericaBank_ | 11) FREQUENCY OF PAYMENTS _Monthly_ |
| 2) INSURED NAME _Martin G. Vega._ | □ SAVINGS  □ CHECKING<br>Account # _110445244_ | 12) SERVICE FEE _45_ |
| 3) INSURED ADDRESS _1817 S. 61 Ave_ | 8) BANK ADDRESS | 13) NET MODIAL PREMIUM / PAYMENT _111_ |
| 4) CITY, STATE, ZIP _Cicero IL 60804_ | 9) CITY, STATE, ZIP | 14) ASSOCIATION - _HAVE_<br>Amount $ _/_ |
| | | 15) OTHER -<br>Amount $ |
| 5) DAY TIME PHONE # _708-780-0122._ | 6) EVENING PHONE # _Soma_ | 10) BANK PHONE # | 16) OTHER -<br>Amount $ |

The above named individual hereinafter referred to as "Client" requests ISM Administrators, hereinafter referred to as "ISMA", to provide the services described below, under the terms and conditions outlined in the Agreement, in return for a periodic service fee identified above and agreed hereto.

**SERVICES:**

The Client shall receive the following services from ISMA:  Effectuate the payment of monies, including premium(s) or deposits to designated third parties as requested or otherwise directed in writing by Client.

In exchange for providing the monthly services for Client, ISMA is entitled to a monthly service fee as designated above. The fee is earned following the performance of the monthly service. ISMA may, from time to time, in its discretion modify the service fee upon thirty (30) day written notice to Client.

In order to receive the above services, Client hereby authorizes their bank to accept periodic electronic transfers or drafts from the Bank of America's Automated Payment Service for the amount stipulated above or as modified in writing from Client in the frequency stipulated above. Said transfers shall continue subject to the terms of the Agreement.

**AUTHORIZATION FOR AUTOMATIC TRANSFER OF FUNDS:  (NOT APPLICABLE TO ANNUAL PAYMENT)**

I/we hereby authorize the transfer of funds held in the above named institution for the purpose of making monthly payments on my behalf. I authorize the above named institution to accept transfer of funds as if the transfer were signed personally by me. This authority is to remain in effect until I revoke same in writing, and I agree that each institution involved in any transfer shall be fully protected in honoring such transfers until such time. I further agree that if any transfer is dishonored due to any reason, the institutions involved shall be under no liability whatsoever even though it may result in the non-payment of my insurance premium or capital accumulation deposit. In addition, I authorize ISMA to reverse any payment made on my behalf if my transfer is dishonored for any reason. In the event that an erroneous electronic transaction is posted to my account, ISMA may execute a reversal of that transaction.

**TERMS AND CONDITIONS:**

Client may terminate this Agreement at any time giving ISMA thirty (30) days written notice. ISMA may choose to terminate this Agreement if for any reason a debit transfer from Client's bank cannot be made due to insufficient funds, stop payment order, or closure of said account. In this event a service charge of $10.00 will be charged to client. Client acknowledges that, in the event a debit transfer is unsuccessful for the reasons stated above, any payments on the Client's behalf to any institution will not be made until Client satisfies the unsuccessful debit plus all related fees. Should ISMA choose to terminate this Agreement due to occurrence of unsuccessful debit transfer, the Client will forfeit any right to a refund of any fees paid to date, without releases of obligation on monies still owing to ISMA, or its custodian.

Client agrees that any monies owed to ISMA, or its custodian, shall be subject to any additional charges and costs incurred by ISMA, or its custodian, through collection procedures, legal fees, and court costs. In the event that the parties must litigate disagreements arising from this contract, the parties hereto agree to conduct any such litigation under the laws of the Sate of California, and that venue for such proceedings shall be only in the County of Orange, State of California.

Client agrees that any late fees, adverse credit reports to any credit reporting agency, loss of coverage, or loss of interest/gain on any capital accumulation account due to inaccessible or insufficient funds in the Client's account are the sole responsibility of the Client.

Client agrees that ISMA, the custodian, and all recipients of directed payments shall not be liable for any loss occasioned by inadvertent delay or error in remitting monies to the institution or designated account, nor shall such companies bear any responsibility for any security transactions effectuated on behalf of Client by a third party. Client agrees that electronic transfers or drafts prior to policy approval and issue, if applicable, do not constitute, imply or guarantee the issuance of insurance coverage. Client understands that ISMA is solely an administrator of Client's monies and contracting with ISMA does not require the purchase of any other services.

IT IS THE CLIENT'S RESPONSIBILITY TO NOTIFY ISMA IN WRITING, THIRTY (30) DAYS PRIOR TO THEIR NEXT PAYMENT, OF ANY CHANGE OF ADDRESS, BANK ACCOUNT NUMBER, OR CHANGE OF BANK. FAILURE TO DO SO MAY RESULT IN A PAYMENT NOT BEING MADE TO INSURER, CAPITAL ACCUMULATION ACCOUNT, ASSOCIATION, OR OTHER BENEFIT. ALTHOUGH WE MAY CONTINUE TO DRAFT FOR PREMIUM WHEN YOU HAVE MISSED A PAYMENT, YOUR COVERAGE MAY NOT BE IN FORCE IN THE EVENT OF A CLAIM AGAINST YOUR POLICY.

If any one or more of the provisions and/or conditions contained in the Agreement shall be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not effect any other provision of this Agreement.

I/we have read, and agree to, the terms and conditions as stated above.

| DEPOSITOR (SIGNATURE)<br>X _marlen Vega_ | OWNER IF OTHER THAN DEPOSITOR | **EXHIBIT**<br>B | DATE<br>_02-18-03_ |
|---|---|---|---|

**ATTACH VOIDED CHECK OR SAVINGS DEPOSIT SLIP SHOW** NUMBERS
COPYRIGHT INTERSTATE SPECIALITY MARKETING, INC. 200

# SERVICE AGREEMENT

**ADMINISTERED BY: ISM ADMINISTRATORS (ISMA)** • 17722 IRVINE BOULEVARD • TUSTIN, CA 92780 • (714) 505-1100
www.ismflex.com

| | | |
|---|---|---|
| 1) DEPOSITORS NAME - Last   First   M.I.<br>*MARTIN   G   VEGA* | 7) NAME OF BANK<br>*Mid America Bank* | 11) FREQUENCY OF PAYMENTS<br>*MONTHLY* |
| 2) INSURED NAME<br>*MARTIN   G   VEGA* | ☐ SAVINGS   ☑ CHECKING<br>*0110285569* | 12) SERVICE FEE<br>*45* |
| 3) INSURED ADDRESS<br>*1826 G   61 Ar* | 8) BANK ADDRESS<br>*55th and Holmes* | 13) NET MODIAL PREMIUM / PAYMENT<br>*1/1* |
| 4) CITY, STATE, ZIP<br>*Chicago   Il* | 9) CITY, STATE, ZIP<br>*Clarendon Hill I 60514* | 14) ASSOCIATION - *AHIT*<br>Amount $ *45* |
| | | 15) OTHER -<br>Amount $ |
| 5) DAY TIME PHONE #<br>*773-7300422* | 6) EVENING PHONE #<br>*708 8374950* | 10) BANK PHONE #<br>*630-3259320* | 16) OTHER -<br>Amount $ |

The above named individual hereinafter referred to as "Client" requests ISM Administrators, hereinafter referred to as "ISMA", to provide the services described below, under the terms and conditions outlined in the Agreement, in return for a periodic service fee identified above and agreed hereto.

SERVICES:

The Client shall receive the following services from ISMA: Effectuate the payment of monies, including premium(s) or deposits to designated third parties as requested or otherwise directed in writing by Client.

In exchange for providing the monthly services for Client, ISMA is entitled to a monthly service fee as designated above. The fee is earned following the performance of the monthly service. ISMA may, from time to time, in its discretion modify the service fee upon thirty (30) day written notice to Client.

In order to receive the above services, Client hereby authorizes their bank to accept periodic electronic transfers or drafts from the Bank of America's Automated Payment Service for the amount stipulated above or as modified in writing from Client in the frequency stipulated above. Said transfers shall continue subject to the terms of the Agreement.

AUTHORIZATION FOR AUTOMATIC TRANSFER OF FUNDS: (NOT APPLICABLE TO ANNUAL PAYMENT)

I/we hereby authorize the transfer of funds held in the above named institution for the purpose of making monthly payments on my behalf. I authorize the above named institution to accept transfer of funds as if the transfer were signed personally by me. This authority is to remain in effect until I revoke same in writing, and I agree that each institution involved in any transfer shall be fully protected in honoring such transfers until such time. I further agree that if any transfer is dishonored due to any reason, the institutions involved shall be under no liability whatsoever even though it may result in the non-payment of my insurance premium or capital accumulation deposit.

TERMS AND CONDITIONS:

Client may terminate this Agreement at any time giving ISMA thirty (30) days written notice. ISMA may choose to terminate this Agreement if for any reason a debit transfer from Client's bank cannot be made due to insufficient funds, stop payment order, or closure of said account. In this event a service charge of $10.00 will be charged to client. Client acknowledges that, in the event a debit transfer is unsuccessful for the reasons stated above, any payments on the Client's behalf to any institution will not be made until Client satisfies the unsuccessful debit plus all related fees. Should Client choose to terminate this Agreement due to occurrence of unsuccessful debit transfer, the Client will forfeit any right to a refund of any fees paid to date, without releases of obligation on monies still owing to ISMA, or its custodian.

Client agrees that any monies owed to ISMA, or its custodian, shall be subject to any additional charges and costs incurred by ISMA, or its custodian, through collection procedures, legal fees, and court costs. In the event that the parties must litigate disagreements arising from this contract, the parties hereto agree to conduct any such litigation under the laws of the Sate of California, and that venue for such proceedings shall be only in the County of Orange, State of California.

Client agrees that any late fees, adverse credit reports to any credit reporting agency, loss of coverage, or loss of interest/gain on any capital accumulation account due to inaccessible or insufficient funds in the Client's account are the sole responsibility of the Client.

Client agrees that ISMA, the custodian, and all recipients of directed payments shall not be liable for any loss occasioned by inadvertent delay or error in remitting monies to the institution or designated account, nor shall such companies bear any responsibility for any security transactions effectuated on behalf of Client by a third party. Client agrees that electronic transfers or drafts prior to policy approval and issue, if applicable, do not constitute, imply or guarantee the issuance of insurance coverage. Client understands that ISMA is solely an administrator of Client's monies and contracting with ISMA does not require the purchase of any other services.

IT IS THE CLIENT'S RESPONSIBILITY TO NOTIFY ISMA IN WRITING, THIRTY (30) DAYS PRIOR TO THEIR NEXT PAYMENT, OF ANY CHANGE OF ADDRESS, BANK ACCOUNT NUMBER, OR CHANGE OF BANK. FAILURE TO DO SO MAY RESULT IN A PAYMENT NOT BEING MADE TO INSURER, CAPITAL ACCUMULATION ACCOUNT, ASSOCIATION, OR OTHER BENEFIT. ALTHOUGH WE MAY CONTINUE TO DRAFT FOR PREMIUM WHEN YOU HAVE MISSED A PAYMENT, YOUR COVERAGE MAY NOT BE IN FORCE IN THE EVENT OF A CLAIM AGAINST YOUR POLICY.

If any one or more of the provisions and/or conditions contained in the Agreement shall be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not effect any other provision of this Agreement.

I/we have read, and agree to, the terms and conditions as stated above.

| DEPOSITOR (SIGNATURE)<br>*Martin G Vega* | OWNER IF OTHER THAN DEPOSITOR (SIGNATURE) | DATE<br>*5-7-2* |
|---|---|---|

## ATTACH VOIDED CHECK OR SAVINGS DEPOSIT SLIP SHOWING ACH TRANSIT NUMBERS
COPYRIGHT INTERSTATE SPECIALITY MARKETING, INC. 1999 ALL RIGHTS RESERVED

**Conditional Receipt — Do Not Detach Unless Full First
Premium Is Paid With Application**

The term "policy" shall mean "certificate" where coverage is issued on a group policy. No insurance will become effective prior to policy delivery, until each and every condition contained in this receipt is met. No agent or broker of Fidelity Security Life Insurance Company ("the Company") is authorized to alter or waive any of the following conditions.

Received from _Marco Vega_ the sum of $ _116_ this _7_ day of _May_ 19 _3002_. for the full first premium specified in the application for life insurance with the Company which bears the same date as this receipt. Agent Name

Agent Signature _Maxine Hale_

*This receipt is not valid unless it is signed by an agent of the Company.*

The conditions under which insurance, for which payment as described above is intended, may become effective prior to delivery are as follows:

1. The Proposed Insured(s) may be, on the Effective Date as hereafter defined, a risk acceptable to the Company under its rules, standards and practices for the exact policy and premium applied for, without any modification.
2. The amount of payment taken with the application must be equal to the amount of the full first premium according to the mode of premium payment selected.
3. The policy is issued exactly as applied for within 60 days from the date of application.

If each and every one of the above conditions shall have been fulfilled, then insurance as provided by the terms and conditions of the policy applied for will become effective, prior to policy delivery. If the Optional 10 Year Term Insurance Rider is applied for and the above conditions are met for such insurance, the Optional 10 Year Term Insurance Rider for which the other persons to be covered are insurable under the Company's rules, shall be effective as provided above. The total amount of insurance (life insurance and any accidental death benefits attached thereto as a rider) which may become effective prior to the policy delivery shall not exceed $75,000 per Proposed Insured.

Definition of "Effective Date":
Means the later of: (a) the date the application is signed; (b) the date of completion of all medical examinations, if required; or (c) the Requested Policy Date shown on the application.

*If one or more of the conditions is not met, the liability of the Company will be limited to the return of the sum received. This receipt will be void if given for a check or draft which is not honored on presentation.*

All premium checks must be made payable to the Company or ISM Administrators: Do not make check payable to the agent or leave the payee blank.

Applicant Signature _Marco M. Vega_

# ISM ADMINISTRATORS
## ACKNOWLEDGMENT

As part of my Association benefits, I have applied for a **FREEDOMFLEX®** Modified Premium Term to Age 100 Life Insurance Policy/Certificate with Flexible Premium Deferred Annuity Rider, underwritten by Fidelity Security Life.

I intend to contribute $ _____ 110 _____ , ☐ weekly   ☐ biweekly   ☒ monthly   ☐ annually.
I understand that I have the *option* to stop premiums and/or coverage after ten years, or continue premiums and/or coverage for a longer period.

I acknowledge and understand that:
1. The annual premium payable for the first policy/certificate year includes an *additional first year premium* of approximately $ _____ .
2. If I elect to discontinue premium on the policy/certificate the *additional first premium* will be forfeited and the only benefit available to me will be as set forth in the non-forfeiture provisions of the policy/certificate. Such benefit may be less in value than the *additional first year premium*.
3. I may experience a monetary loss if the policy/certificate is discontinued before non-forfeiture values become available.
4. The cash value under this policy/certificate arising from the *additional first year premium* will be at least 260% of the *additional first year premium* at the end of the 10th year.

I understand that starting in the second year, part of my premium (an amount equal to the *additional first year premium*) will commence going into the Flexible Premium Deferred Annuity Rider. I understand that I may stop premium from going into my Flexible Premium Deferred Annuity Rider, and redirect it to a separate non-insurance cash accumulation vehicle of my choice by providing written notification to ISM Administrators.

I understand that ISM Administrators will send me a reminder letter near the end of my first year. The letter is a service provided to me, and is *not* an advisory or solicitation to buy any particular investment. The letter will remind me that:
   A.  I can have premium go to my Flexible Premium Deferred Annuity Rider with the insurer.
   B.  I can redirect the Annuity premium to a separate non-insurance vehicle.
   C.  I can take a combination of both.

I understand that "A" shall be automatic should I fail to respond to the letter. I understand that if I elect "B" or "C", I will be in direct contact with a registered investment company that is separate from, and not connected with, the insurer or ISM Administrators.

I understand that I may increase my cash accumulation contribution annually to accommodate cost of living increases, thereby adding to its growth.
   ☐  Please automatically increase my monthly draft by _____% or $ _____ on each plan anniversary.
   ☒  I will notify ISMA in writing of any contribution increases I wish to make.

I understand that ISM Administrators will adjust my premium payments according to my written instructions, and that I can modify instructions annually in writing. I understand that should I die, my beneficiary will receive the face amount of my policy/certificate PLUS any value in my cash accumulation vehicle PLUS, if this occurs during the first ten years that my life insurance is in force, the fully matured value of the additional first year premium.

> **ACCELERATED DEATH BENEFIT DISCLOSURE ACKNOWLEDGEMENT**
> I acknowledge receipt of the Accelerated Death Benefit Disclosure Statement (Form #N-00155) which describes additional benefits attached to the certificate/policy for which I am applying.
>
> Initial _Huh_

| | | |
|---|---|---|
| _Dorothy C. Kiser_ | _Dorothy C. Kiser_ | _5-9-2_ |
| Signature of Proposed Insured or Owner (circle one) | Printed Name of Proposed Insured or Owner | Date |
| | | |
| Signature of Owner (If Other Than the Insured) | Printed Name of Owner | Date |
| _Norma White_ | _Norma White_ | _5-9-2_ |
| Signature of Agent | Printed Name of Agent | Date |

17722 Irvine Boulevard • Tustin, California 92780 • (800) 488-1474
www.ismflex.com

FREEDOMFLEX® IS A TRADEMARK OF INTERSTATE SPECIALTY MARKETING, INC.
COPYRIGHT INTERSTATE SPECIALTY MARKETING, INC., 2000, ALL RIGHTS RESERVED