File No. 3006390-JDL

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| MARTIN G. VEGA. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08 CV 771 |
| FIDELITY SECURITY LIFE | ) | Judge Grady |
| INSURANCE COMPANY and ISM | ) | Magistrate Judge Brown |
| ADMINISTRATORS, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS ANSWER, AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT
FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

Defendants, FIDELITY SECURITY LIFE INSURANCE COMPANY ("Fidelity") and ISM ADMINISTRATORS ("ISMA"), by and through their attorneys, SmithAmundsen LLC, in answer to Plaintiff, MARTIN G. VEGA's ("Plaintiff"), Complaint for Declaratory Judgment and Other Relief, state as follows:

**COUNT I**

1.  Plaintiff is a resident of the City of Berwyn, County of Cook, State of Illinois.

**ANSWER:** Defendants lack sufficient knowledge to form a belief as to the truth or falsity of the averments contained in Paragraph One (1), and therefore neither admit nor deny the same, but demand strict proof thereof.

2.  On or about January 1, 1999, plaintiff purchased a Certificate of Insurance ("Certificate") evidencing his insurance coverage under a Master Insurance policy issued to the American Association of Private Employees, by Fidelity. Plaintiff does not have a copy of the Certificate to attach to this complaint. A copy of the of [sic] the Policy, is attached hereto and incorporated herein by reference as plaintiff's Exhibit A.

**ANSWER:** Defendants state that the averments of Paragraph Two (2) are based upon written documents that speak for themselves. To the extent that Plaintiff's allegations are

inconsistent with these documents, Fidelity and ISMA deny the allegations.

3.   The Policy contains a Monthly Disability Income Benefit Rider. A copy of the Rider is part of the Policy, attached hereto.

**ANSWER:**   Defendants state that the averments of Paragraph Three (3) are based upon written documents that speak for themselves.  To the extent that Plaintiff's allegations are inconsistent with these documents, Fidelity and ISMA deny the allegations.

4.   Simultaneously with his purchase of the Certificate, plaintiff entered into a service agreement with ISMA ("Service Agreement") pursuant to which ISMA agreed to facilitate the automatic transfer of funds from plaintiff's bank account at MidAmerica Bank to Fidelity in payment of the monthly Certificate/Policy premium. A copy of the service agreement is attached and incorporated by reference as plaintiff's Exhibit B.  The Service Agreement was in effect at all times relevant to the facts set forth in this complaint.

**ANSWER:**   Defendants state that the averments of Paragraph Four (4) are based upon written documents that speak for themselves.  To the extent that Plaintiff's allegations are inconsistent with these documents, Fidelity and ISMA deny the allegations.

5.   Pursuant to the Service Agreement, plaintiff authorized ISMA to timely withdraw funds equal to the monthly premium due on the Certificate/Policy from plaintiff's account at MidAmerica Bank and to convey those funds to Fidelity.

**ANSWER:**   Defendants state that the averments of Paragraph Five (5) are based upon written documents that speak for themselves.  To the extent that Plaintiff's allegations are inconsistent with these documents, Fidelity and ISMA deny the allegations.

6.   In the performance of its duties pursuant to the service agreement ISMA was acting at all times as the agent of both plaintiff and Fidelity.

**ANSWER:**   Defendants object to the averments contained in Paragraph Six (6) as those averments are legal conclusions to which no response is required.  To the extent that an answer is necessary, Defendants deny said averments.

7.   At no time during the months of August, 2005 through February, 2006, did plaintiff instruct MidAmerica Bank to dishonor the request for the automatic withdrawals to be

made by ISMA pursuant to the terms of the Service Agreement.

**ANSWER:** Defendants lack sufficient knowledge to form a belief as to the truth or falsity of the averments contained in Paragraph Seven (7), and therefore neither admit nor deny the same, but demand strict proof thereof.

8. Fidelity, through its agent, defendant ISMA, had "a duty to direct the timely monthly withdrawals of the Policy premium amounts from plaintiff's bank account at MidAmerica Bank and to transmit the premium amounts to Fidelity so as to maintain the plaintiff's insurance coverage under the terms of the Policy, and particularly, under the terms of the Policy's disability insurance rider.

**ANSWER:** Defendants state that the averments of Paragraph Eight (8) are legal conclusions to which no response is required. To the extent an answer is required, defendants deny the allegations of Paragraph eight (8).

9. In contravention of its obligations and covenants as aforesaid, Fidelity, through its agent, ISMA, breached its duty to plaintiff in the following ways:

   (a) ISMA failed and refused to request MidAmerica Bank to make the automatic payment to fidelity for plaintiff's December, 2005 premium payment.

   (b) Neither Fidelity nor ISMA gave timely notice to plaintiff of ISMA's failure and refusal as aforesaid, so plaintiff believed the premium had been paid and was unable to timely make the premium payment to Fidelity in some other fashion.

   (c) As a direct result of ISMA failure and refusal to make the required withdrawal of funds as aforesaid, and the further failure of Fidelity and ISMA to give timely notice of that failure and refusal to plaintiff the insurance premium due Fidelity for the month of December, 2005 was not paid and Fidelity wrongly notified plaintiff that his insurance coverage under the Policy had lapsed and terminated.

**ANSWER:** Defendants deny the averments contained in Paragraph Nine (9), including subparagraphs (a)-(c).

10. After terminating the plaintiff's insurance coverage, Fidelity thereafter allowed plaintiff to reinstate coverage, but only upon re-application and payment of the December, 2005 premium, all of which plaintiff did.

3

**ANSWER:** Defendants deny the averments contained in Paragraph Ten (10).

11. Before Fidelity wrongfully declared that plaintiff's insurance coverage had lapsed, plaintiff had been diagnosed with a form of stomach cancer, and as a result thereof, plaintiff became totally and permanently disabled.

**ANSWER:** Defendants state that the averments of Paragraph Eleven (11) are legal conclusions to which no response is required. To the extent an answer is required, Defendants deny that "Fidelity wrongfully declared that plaintiff's insurance coverage had lapsed." As to the remaining averments contained in Paragraph Eleven (11), Defendants lack sufficient knowledge to form a belief as to the truth or falsity of the averments contained in Paragraph Eleven (11), and therefore neither admit nor deny the same, but demand strict proof thereof.

12. Plaintiff requested disability payments pursuant to his Certificate/Policy.

**ANSWER:** Defendants admit the averments contained in Paragraph Twelve (12).

13. Fidelity has refused to provide disability benefits pursuant to the Certificate/Policy, asserting that plaintiff failed to disclose in his application for reinstatement that he had succumbed to stomach cancer.

**ANSWER:** Defendants admit the averments contained in Paragraph Thirteen (13). Defendants further answer that Plaintiff may have also made additional material misrepresentations in his application for reinstatement other than those listed in Paragraph Thirteen (13).

14. At all relevant times, plaintiff had complied fully with the terms of the original Certificate/Policy and with the terms of the Servicing Agreement.

**ANSWER:** Defendants deny the averments contained in Paragraph Fourteen (14).

15. Fidelity's refusal to make disability payments to plaintiff pursuant to the original Certificate/Policy is vexatious and unreasonable.

16. **ANSWER:** Defendants deny the averments contained in Paragraph Fifteen (15).

**WHEREFORE**, Defendants, FIDELITY SECURITY LIFE INSURANCE and ISM ADMINISTRATORS pray that this honorable Court enter judgment in their favor and against Plaintiff, MARTIN G. VEGA :

(1) Declaring that the original disability and insurance policy was properly terminated;

(2) Declaring that Plaintiff is not entitled to disability benefits under the policy;

(3) Declaring that Plaintiff is not entitled to costs or reasonable attorney's fees provided by 215 ILCS 5/155;

(4) Awarding Defendants their reasonable attorneys fees and costs in responding to Plaintiff's claims; and

(5) Awarding such other relief as this Court deems fair and equitable.

## COUNT II

1-7. Paragraphs 1 though 7 of Count I are here repeated as paragraphs 1 through 7 of Count II.

**ANSWER:** Defendants hereby adopt and incorporate their responses to Paragraphs 1 through 7 of Count I.

8. Pursuant to its express responsibilities under the Servicing Agreement, ISMA had a duty to direct the timely monthly withdrawals of the Policy premium amounts from plaintiff's bank account at MidAmerica Bank and to transmit the premium amounts to Fidelity so as to maintain the plaintiff's insurance coverage under the terms of the Policy, and particularly, under the terms of the Policy's disability insurance rider.

**ANSWER:** Defendants state that the averments of Paragraph Eight (8) are based upon written documents that speak for themselves. To the extent that Plaintiff's allegations are inconsistent with these documents, Fidelity and ISMA deny the allegations.

9. In contravention of its obligations and covenants as foresaid, ISMA, breached its duty to plaintiff in the following ways:

(a) ISMA failed and refused to request MidAmerica Bank to make the automatic payment to Fidelity for plaintiff's December, 2005 premium

        payment.

(b)    ISMA failed to give plaintiff timely notice of this failure and refusal, so plaintiff believed the premium had been paid and was unable to timely make the premium payment to Fidelity in some other fashion.

(c)    As a direct result of ISMA's failure and refusal to make the required withdrawal of funds as aforesaid, and its further failure to give timely notice of that failure and refusal to plaintiff, the insurance premium due to be paid to Fidelity for the month of December, 2005 was not paid .and Fidelity wrongly notified plaintiff that his insurance coverage under the Policy had lapsed and terminated.

**ANSWER:** Defendants deny the averments contained in Paragraph Nine (9), including subparagraphs (a)-(c).

10-14.    Paragraphs 10 though 14 of Count I are here repeated as paragraphs 10 through 14 of Count II.

**ANSWER:** Fidelity and ISMA hereby adopt and incorporate their responses to Paragraphs 10 through 14 of Count I as if fully set forth herein.

**WHEREFORE**, Defendants, FIDELITY SECURITY LIFE INSURANCE and ISM ADMINISTRATORS pray that this honorable Court enter judgment in their favor and against Plaintiff, MARTIN G. VEGA:

(1)    Declaring that the original disability and insurance policy was properly terminated;

(2)    Declaring that Plaintiff is not entitled to any disability benefits under the policy;

(3)    Awarding Defendants their reasonable attorneys fees and costs in responding to Plaintiff's claims; and

(4)    Awarding such other relief as this Court deems fair and equitable.

## AFFIRMATIVE DEFENSES

Defendants, FIDELITY SECURITY LIFE INSURANCE COMPANY ("Fidelity") and ISM ADMINISTRATORS ("ISMA"), by and through their attorneys, SmithAmundsen, L.L.C., without waiver of any of their denials in the above Paragraphs assert the following Affirmative Defenses:

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims under Counts I and II of his Complaint are barred because Plaintiff failed to make all necessary premium payments as required under the terms of the insurance policy. The insurance policy issued to Plaintiff lapsed after Plaintiff failed to make the September 2005 and December 2005 premium payments within the stated 31 day grace period.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff is barred from receiving disability benefits pursuant to the reinstatement policy for his failure to disclose to Fidelity that he was purportedly diagnosed and being treated for cancer beginning in December of 2005, and smoking within 12 months of applying for reinstatement.

**WHEREFORE**, Defendants, FIDELITY SECURITY LIFE INSURANCE and ISM ADMINISTRATORS pray that this Honorable Court enter judgment in their favor and against Plaintiff, MARTIN G. VEGA:

    (1)    Declaring that Plaintiff is not entitled to any disability benefits;

    (2)    Declaring that neither Fidelity nor ISMA is compelled to make any disability payments to plaintiff;

    (3)    Awarding Defendants their reasonable attorneys fees and costs in responding to Plaintiff's claims; and

    (4)    Awarding such other relief as this Court deems fair and equitable.

## COUNTERCLAIMS FOR DECLARATORY JUDGMENT

Defendants/Counter-Plaintiffs, FIDELITY SECURITY LIFE INSURANCE COMPANY ("Fidelity") and ISM ADMINISTRATORS ("ISMA"), by and through their attorneys, SmithAmundsen LLC, for its Counterclaim for Declaratory Judgment against the Plaintiff/Counter-Defendant, MARTIN G. VEGA ("Plaintiff"), state as follows:

### COUNT I
### (Termination of Original Policy Due to Lapse)

1. On or about May 7, 2002, Fidelity issued plaintiff a term life insurance policy that included disability benefits. The Policy is attached as Exhibit A.

2. Plaintiff subsequently entered into a service agreement with ISMA whereby ISMA agreed to effectuate the payment of monies, including premium(s) or deposits to Fidelity as requested or otherwise directed in writing by Plaintiff. The Service Agreement is attached as Exhibit B.

3. The insurance policy entered into between Fidelity and Plaintiff stated in pertinent part:

> **Grace Period**
>
> The certificate has a 31 day grace period for the payment of each premium due after the first premium. Coverage will continue in force during the grace period. It will terminate at the end of the grace period if all premiums that are due are not paid. We will require pro rata payment of all premiums for the period this coverage continues in force including the premiums for the grace period. This provision is subject to the OPTIONS UPON NONPAYMENT OF PREMIUM provision. If the insured dies during the grace period, the premium is paid from the proceeds of the Certificate.
>
> ***

**Reinstatement**

"An Insured's Certificate may be reinstated within 5 years after default in the payment of any premium.  Reinstatement is subject to:

1. Written application;
2. Receipt of Evidence of Insurability satisfactory to Us;
3. Payment and receipt by Us of past due premiums with interest from the due date of each premium; and
4. Payment and receipt by Us or reinstatement of any indebtedness existing under the Certificate at the date of default, with interest from that date."

\*\*\*

**Termination of Additional Benefits**

When an option upon nonpayment of premium is in effect, any Accidental Death, Waiver of Premium, Term Life or other additional benefit terminates, unless stated otherwise.

4. Plaintiff failed to make the September of 2005 premium payment to Fidelity.

5. ISMA addressed and mailed notifications on September 22, 2005, October 24, 2005, November 21, 2005, and December 22, 2005, that his premium payment for September 2005 was unpaid and outstanding and that non-payment of the premium may lapse Plaintiff's coverage under the policy.

6. Plaintiff subsequently failed to make the December of 2005 premium payment to Fidelity.

7. ISMA addressed and mailed a notification to plaintiff on December 22, 2005, informing him that his premium payments for September and December were outstanding and that non-payment of the premium may lapse Plaintiff's coverage under the policy.

8. Prior to the cancellation of the insurance policy, Plaintiff never made payment to Fidelity or ISMA to satisfy the balances for the September 2005 and December 2005 premiums.

9. On or about January 26, 2006, Fidelity addressed and mailed a letter to plaintiff

informing him that the term life insurance policy lapsed due to his failure to pay his outstanding balance within the stated 31 day grace period.

**WHEREFORE**, Defendants/Counter-plaintiffs, FIDELITY SECURITY LIFE INSURANCE and ISM ADMINISTRATORS pray that this Honorable Court enter judgment in their favor and against Plaintiff/Counter-defendant, MARTIN G. VEGA:

(1) Declaring that Fidelity properly terminated the term life insurance coverage issued to plaintiff on January 26, 2006, for plaintiff's failure to pay the September 2005 and December 2005 premium payments within the stated 31 day grace period; and

(2) Awarding Defendants their reasonable attorneys fees and costs in responding to Plaintiff's claims; and

(3) Awarding such other relief as this Court deems fair and equitable.

## COUNT II
### (Rescission of Reinstated Policy)

1-14   Fidelity and ISMA reassert and incorporate by reference paragraphs 1 through 14 of Count I as if fully restated herein.

15.   On or about January 27, 2006, ISMA offered plaintiff the opportunity to reinstate his prior term life insurance policy underwritten by Fidelity.

16.   Pursuant to the terms of the insurance policy, Plaintiff needed to complete an application for insurance prior to reinstatement of the lapsed policy.

17.   Plaintiff completed and delivered a reinstatement application to ISMA on or about February 21, 2006.

18.   In the application, Plaintiff was required to answer yes or no to the following to the following health questions which included but was not limited to: (1) whether the Plaintiff had been in a hospital, clinic, or institution for examination, observation, diagnosis, operation or treatment within the last five years; (2) whether the Plaintiff had received treatment for any

abnormality, deformity, disease or disorder; and (3) whether the Plaintiff had used any form of tobacco in the twelve months prior to completing the application.

19. In completing the application, Plaintiff failed to disclose that on or about December 14, 2005, plaintiff was diagnosed with cancer and was receiving treatment up until the time he submitted his reinstatement application. Plaintiff further failed to disclose that he regularly used tobacco products during the twelve months prior to completing the application.

20. Plaintiff answered "no" in response to all health questions.

21. Based upon the Plaintiff's responses contained in his application, Fidelity approved plaintiff for reinstatement on or about February 24, 2006.

22. On or about July 17, 2006, plaintiff filed for disability benefits with Fidelity.

23. Fidelity subsequently learned of the misrepresentations contained in Plaintiff's application for reinstatement.

24. The misrepresentations were material to Fidelity's decision to reinstate Plaintiff's insurance contract.

25. Based upon the material misrepresentations contained in his application, Fidelity denied Mr. Vega's claim for disability benefits and rescinded the reinstatement policy on or about November 7, 2006.

**WHEREFORE**, Defendants/Counter-plaintiffs, FIDELITY SECURITY LIFE INSURANCE and ISM ADMINISTRATORS pray that this Honorable Court enter judgment in their favor and against Plaintiff/Counter-defendant, MARTIN G. VEGA:

(1) Declaring that Fidelity properly rescinded the reinstatement policy based upon plaintiff's material misrepresentations and omissions in the reinstatement application; and

(2) Awarding Defendants their reasonable attorneys fees and costs in responding to Plaintiff's claims; and

(3) For such other relief as this Court deems fair and equitable.

Dated: February 11, 2008

                                          Respectfully submitted,

                                          FIDELITY SECURITY LIFE INSURANCE COMPANY and ISM ADMINISTRATORS

                                          By:       /s/ John D. LaBarbera
                                                  One of its Attorneys for Defendants

John D. LaBarbera, Esq. (ARDC # 6274012)
Robert D. Boroff, Esq. (ARDC # 6289100)
SmithAmundsen LLC
150 North Michigan Avenue, Suite 3300
Chicago, Illinois 60601
Telephone: (312) 894-3200