**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION**

| | | |
|---|---|---|
| MARTIN G. VEGA, | ) | |
| | ) | |
| Plaintiff, | ) | No.   08 CV 771 |
| | ) | |
| vs. | ) | Judge Grady |
| | ) | |
| FIDELITY SECURITY LIFE INSURANCE COMPANY and ISM ADMINISTRATORS, | ) ) ) | Magistrate Judge Brown |
| | ) | |
| Defendants. | ) | |

**ANSWER TO COUNTERCLAIM FOR DECLARATORY JUDGMENT**

Plaintiff, MARTIN G. VEGA, by his attorneys, STEVEN A. GROSSMAN and MICHAEL J. GOLDSTEIN, provides the following answer to Defendants' Counterclaim:

**COUNT I**
**(Termination of Original Policy Due to Lapse)**

1. On or about May 7, 2002, Fidelity issued plaintiff a term life insurance policy that included disability benefits.  The Policy is attached as Exhibit A.

**Answer:**   **Plaintiff admits the allegation contained therein.**

2. Plaintiff subsequently entered into a service agreement with ISMA whereby ISMA agreed to effectuate the payment of monies, including premium(s) or deposits to Fidelity as requested or otherwise directed in writing by Plaintiff.  The Service Agreement is attached as Exhibit B.

**Answer:**   **Plaintiff admits the allegation contained therein.**

3. The insurance policy entered into between Fidelity and Plaintiff stated in pertinent part:

> **Grace Period**
> The certificate has a 31 day grace period for the payment of each premium due after the first premium.  Coverage will continue in force during the grace period.  It will terminate at the end of the grace period if all premiums that are due are not paid.  We will require pro rata payment of all premiums for the period this coverage continues in force including the premiums for the grace period. This provision is subject to the OPTIONS UPON NONPAYMENT OF PREMIUM provision.  If the insured dies during the grace period, the premium is paid from the proceeds of the Certificate.

***

> **Reinstatement**
> "An Insured's Certificate may be reinstated within 5 years after default in the payment of any premium. Reinstatement is subject to:
>
> 1. Written application;
> 2. Receipt of Evidence of Insurability satisfactory to Us;
> 3. Payment and receipt by Us of past due premiums with interest from the due date of each premium; and
> 4. Payment and receipt by Us or reinstatement of any indebtedness existing under the Certificate at the date of default, with interest from that date."
>
> \*\*\*
>
> **Termination of Additional Benefits**
> When an option upon nonpayment of premium is in effect, any Accidental Death, Waiver of Premium, Term Life or other additional benefit terminates, unless stated otherwise.

 **Answer:** **Plaintiff states that the allegations in Paragraph 3 are based upon written documents which speak for themselves.**

 4. Plaintiff failed to make the September of 2005 premium payment to Fidelity.

 **Answer:** **Plaintiff denies the allegations contained therein. Further, when plaintiff received his first notice of non-receipt of the September 2005 premium payment, dated October 24, 2005, due to ISMA Administrator's failure to make the withdrawal funds from his designated bank account, he paid this premium by money order.**

 5. ISMA addressed and mailed notifications on September 22, 2005, October 24, 2005, November 21, 2005, and December 22, 2005, that his premium payment for September 2005 was unpaid and outstanding and that non-payment of the premium may lapse Plaintiff's coverage under the policy.

 **Answer:** **Plaintiff denies that he received a notification dated September 22, 2005, but received the other notifications. Plaintiff states further, that, upon receipt of the notices, he made the payment by money order.**

 6. Plaintiff subsequently failed to make the December of 2005 premium payment to Fidelity.

 **Answer:** **Plaintiff denies the allegation contained therein.**

 7. ISMA addressed and mailed a notification to plaintiff on December 22, 2005,

2

informing him that his premium payments for September and December were outstanding and that non-payment of the premium may lapse Plaintiff's coverage under the policy.

 **Answer:** **Plaintiff admits the allegation contained therein, but denies that this notice was accurate.**

 8. Prior to the cancellation of the insurance policy, Plaintiff never made payment to Fidelity or ISMA to satisfy the balances for the September 2005 and December 2005 premiums.

 **Answer:** **Plaintiff denies the allegation contained therein.**

 9. On or about January 26, 2006, Fidelity addressed and mailed a letter to plaintiff informing him that the term life insurance policy lapsed due to his failure to pay his outstanding balance within that stated 31 day grace period.

 **Answer:** **Plaintiff denies the allegation contained therein.**

WHEREFORE, plaintiff prays that this Court enter judgment in its favor against defendants, and:

 1. Declare that defendant, Fidelity, did not properly terminate the term life insurance coverage issued to plaintiff on January 26, 2006, the failure to pay premiums.

 2. That it strike defendant's request for reasonable attorney's fees, regardless of the outcome of this matter.

 3. Awarding such other relief as this Court deems just.

## COUNT II
### (Rescission of Reinstated Policy)

 1-14. Fidelity and ISMA reassert and incorporate by reference paragraphs 1 through 14 of Count I as if fully restated herein.

 **Answer:** **Plaintiff re-alleges and reincorporates by reference paragraphs 1 through 14 its answer to Count I as paragraphs 1 through 14 of Count II.**

 15. On or about January 27, 2006, ISMA offered plaintiff the opportunity to reinstate his prior term life insurance policy underwritten by Fidelity.

 **Answer:** **Plaintiff admits the allegations contained therein.**

 16. Pursuant to the terms of the insurance policy, Plaintiff needed to complete

3

an application for insurance prior to reinstatement of the lapsed policy.

>**Answer:** **Plaintiff admits the allegations contained therein.**

17. Plaintiff completed and delivered a reinstatement application to ISMA on or about February 21, 2006.

>**Answer:** **Plaintiff admits the allegations contained therein.**

18. In the application, Plaintiff was required to answer yes or no to the following to the following health questions which included but was not limited to: (1) whether the Plaintiff had been in a hospital, clinic, or institution for examination, observation, diagnosis, operation or treatment within the last five years; (2) whether the Plaintiff had received treatment for any abnormality, deformity, disease or disorder; and (3) whether the Plaintiff had used any form of tobacco in the twelve months prior to completing the application.

>**Answer:** **Plaintiff states that the application is a written instrument which speaks for itself.**

19. In completing the application, Plaintiff failed to disclose that on or about December 14, 2005, plaintiff was diagnosed with cancer and receiving treatment up until the time he sustained his reinstatement application. Plaintiff further failed to disclose that he regularly used tobacco products during the twelve months prior to completing the application.

>**Answer:** **Plaintiff admits the allegation contained therein. Plaintiff states further that he deemed this application as one for reinstatement of the original policy, the issuance which would be based upon his initial application.**

20. Plaintiff answered "no" in response to all health questions.

>**Answer:** **Plaintiff admits the allegations contained therein.**

21. Based upon the Plaintiff's responses contained in his application, Fidelity approved plaintiff for reinstatement on or about February 24, 2006.

>**Answer:** **Plaintiff has no basis to admit the veracity of the allegation contained therein, and leaves defendants to their strictest proof thereof.**

22. On or about July 17, 2006, plaintiff filed for disability benefits with Fidelity.

>**Answer:** **Plaintiff admits the allegations contained therein.**

23. Fidelity subsequently learned of the misrepresentations contained in

Plaintiff's application for reinstatement.

> **Answer: Plaintiff denies that he misrepresented the status of his health and disability in his application for reinstatement. Plaintiff believed this application related back to his original application for the policy which Fidelity wrongfully cancelled.**

24.     The misrepresentations were material to Fidelity's decision to reinstate Plaintiff's insurance contract.

> **Answer:     Plaintiff denies the allegation contained therein.**

25.     Based upon the material misrepresentations contained in his application, Fidelity denied Mr. Vega's claim for disability benefits and rescinded the reinstatement policy on or about November 7, 2006.

> **Answer:     Plaintiff has no information sufficient to admit the veracity of the allegation contained therein, and leaves defendant to its strict proof thereof.**

WHEREFORE, Plaintiff/Counter-defendant, MARK VEGA, prays that his Honorable Court enter judgment in his favor against Defendants/Counter-plaintiff, with interest, costs and reasonable attorney's fees.

MARTIN G. VEGA

By: \s\ Steven A. Grossman

By: \s\Michael J. Goldstein

Michael J. Goldstein and Associates, Ltd.
Michael J. Goldstein (ARDC# 1000020)
Steven A. Grossman (ARDC # 1073729)
318 W. Adams, #1700
Chicago, IL 60606
312-444-9528 (Grossman)
312-346-0945 (Goldstein)
312-346-0946 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on February 29, 2008, I electronically filed the foregoing "Reply to Affirmative Defenses" with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

Glen E. Amundsen		gamundsen@salawus.com

Robert D. Boroff		rboroff@salawus.com

John D. LaBarbera		jlabarbera@osalaw.com


					/s/ Steven A. Grossman